NUNN-STUBBLEFIELD OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66085. Promulgated September 18, 1934.

*L. E. Cahill, Esq.*, for the petitioner.
*O. W. Swecker, Esq.*, for the respondent.

### OPINION.

TRAMMELL: This proceeding is for the redetermination of a deficiency in income tax of $1,543.38 for 1929. The only issue presented for determination is whether the petitioner is entitled to a deduction from gross income of an amount of $17,282.06 representing expenditures for drilling made during the taxable year in connection with a certain oil lease.

The petitioner is a Texas corporation, organized February 12, 1927, with its principal place of business at Amarillo. The business of the petitioner is that of producing and selling oil and gas.

On June 7, 1924, the Roxana Petroleum Corporation (name subsequently changed to Shell Petroleum Corporation) acquired from W. D. Jordan and others an oil and gas lease on certain lands situated in Carson County, Texas, described as the southeast quarter of section 104, block 4, I. & G. N. Railway Co. survey, and containing

160 acres, more or less. The consideration paid for the lease was $4,000 and the covenants and agreements contained therein.

The lease, which was assignable in whole or in part, was for a period of five years from the date thereof and as much longer thereafter as oil and gas should be produced from the land or royalties paid thereunder or as the lessee in good faith should conduct operations for obtaining oil or gas thereon. The lease provided for the payment as royalty by the lessee of one eighth of the oil and gas produced.

The minutes of a special meeting of the directors of the petitioner held on May 1, 1929, are in part as follows:

Director E. M. Pittman stated that J. E. Stubblefield [secretary and treasurer of petitioner], C. R. Austin [vice president of petitioner] and E. M. Pittman were negotiating with the Shell Petroleum Corporation for the drilling of a well in the southeast quarter of Section 104, Block 4, I&GN Ry. survey, Carson County, Texas, on a basis of a $\frac{1}{32}$nd overriding royalty for a well producing less than 50 barrels daily in any calendar month, and a $\frac{1}{8}$th overriding royalty for the gas and casing gas; that a good gas well was drilled on the northeast quarter of said section, which had a good showing of oil and probably would have made a commercial oil well if properly completed; that the southeast quarter of section 104 has good geology and probably could not have been obtained except for the fact that the lease on same is about to expire and same cannot be renewed except at what the Shell Petroleum Corporation considers an exorbitant price, and that said J. E. Stubblefield, C. R. Austin and E. M. Pittman, in the event the contract is made for the drilling of this acreage, are agreeable to letting the Nunn-Stubblefield Oil Company finance same and own the lease, if the board of directors thought it desirable.

After a discussion of the matter it was the unanimous opinion of the directors present that the deal would be a good one for the Nunn-Stubblefield Oil Company and that the offer of the parties mentioned should be accepted, whereupon director E. M. Pittman made the following motion:

"I move that the Nunn-Stubblefield Oil Company finance the drilling of the well in the S.E. quarter of Section 104, Block 4, I&GN Ry. survey, Carson County, Texas, on the basis of a 1/32nd overriding royalty for a well producing less than 50 barrels, and a 1/16th overriding royalty for a well producing 50 barrels and over daily in any calendar month, and an overriding royalty of 1/8th on the gas and casing head gas, and that when the terms of the contract between said J. E. Stubblefield, C. R. Austin and E. M. Pittman and the Shell Petroleum Corporation relative to the drilling of the well have been complied with that a request be made by the contracting parties that the assignment to said lease be made direct to the Nunn-Stubblefield Oil Company, and title to same vested in said company; that the drilling of the well be in the name and under the supervision of said J. E. Stubblefield, C. R. Austin, and E. M. Pittman and when completed assignment to the lease be taken in the name of the Nunn-Stubblefield Oil Company."

Which said motion being duly seconded by director C. R. Austin was put to a vote and unanimously carried and adopted and ordered spread on the minutes of the corporation as a permanent record.

On May 11, 1929, an agreement was entered into between the Shell Petroleum Corporation, as first party, and petitioner's directors,

Stubblefield, Pittman, and Austin, as second parties. This agreement, after reciting that the Shell Petroleum Corporation was the owner of an oil and gas lease on the southeast quarter of section 104 heretofore referred to and also on a certain other quarter section not involved herein, provided in part as follows:

WHEREAS, SHELL desires to have said lands developed for oil and gas, and SECOND PARTIES are willing to develop said lands under the terms and provisions and for the considerations hereinafter set forth.

Now, THEREFORE, in consideration of the premises and of the mutual covenants, agreements and obligations hereinafter contained and to be paid, kept and performed, it is hereby agreed by and between the parties hereto as follows:

FIRST: SHELL agrees to sell and assign to SECOND PARTIES and SECOND PARTIES agree to purchase from SHELL the oil and gas leases hereinabove described, in so far as they cover the lands described * * * above, upon acceptance and approval of titles and subject to the overriding royalty reservations to SHELL, and to all of the other terms and provisions hereinafter set forth.

\*  \*  \*  \*  \*  \*  \*

THIRD: SECOND PARTIES agree that for the considerations herein recited, they will on or before June 5, 1929, commence the actual drilling of a well for oil and gas, at a location to be selected by them in the Southeast Quarter of Section 104 described * * * above, and will drill said well with due diligence at their sole cost and expense, to a depth sufficient in the opinion of SHELL to satisfactorily test the Granite Wash found below the Panhandle big line, unless oil or gas is found in paying quantities to the satisfaction of SHELL at a lesser depth. In the event said well results in a producing well, SECOND PARTIES agree to complete the same as such producer at their sole cost and expense.

\*  \*  \*  \*  \*  \*  \*

FIFTH: SHELL agrees that upon completion of the well required in Paragraph THIRD hereof, to the depth therein specified, and upon being furnished with a satisfactory showing that there are no amounts unpaid for labor performed or material furnished in connection with the drilling and completion of said well, it will execute and deliver to SECOND PARTIES its assignment without warranty of title of said oil and gas lease, in so far as it covers the Southeast Quarter of Section 104, described * * * above, reserving to itself, however, by the terms of said assignment, an overriding royalty interest in the production therefrom, as provided in Paragraph SIXTH hereof.

\*  \*  \*  \*  \*  \*  \*

SIXTH: As a further consideration for the assignment of said leases, SECOND PARTIES agree to deliver to SHELL free and clear of all expenses to development and operation of said premises, an overriding royalty interest in all oil produced and saved (without deducting royalty oil) from each well drilled on the above described lands, the amount of royalty oil delivered to be determined monthly, on the basis of the average daily production of oil from each well for each calendar month as follows:

A. The overriding royalty interest in the production of oil from the Southeast Quarter of Section 104 shall be determined monthly by the following schedule:

1. An overriding royalty of 1/32nd of all oil produced and saved from each well having an average daily production for the calendar month for which the royalty is paid, of not more than 50 barrels per day.

2. An overriding royalty of 1/16th of all oil produced and saved from each well having an average daily production for the calendar month for which the royalty is paid, of more than 50 barrels per day.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

SHELL shall also have and reserve to itself an overriding royalty of 1/8th of the gross amount received by SECOND PARTIES from the sale of all gas and casinghead gas produced from said tracts.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

EIGHTH: SECOND PARTIES shall carry on all operations of every kind and character on said premises at their sole cost and expense, and SHELL shall not be liable for any part thereof. SECOND PARTIES agree to promptly pay all indebtedness incurred, and to keep said premises free and clear of liens of every kind and character.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

FOURTEENTH: Upon the failure of SECOND PARTIES to perform any of the terms and provisions herein required, within the time herein specified, SECOND PARTIES shall forfeit their rights hereunder and SHELL shall be under no obligation thereafter to comply with the terms hereof, but SECOND PARTIES shall not thereby be relieved of any liability for damages occasioned to SHELL by reason of such breach.

The leasehold estate acquired by petitioner's directors under the agreement between them and the Shell Petroleum Corporation of May 11, 1929, was acquired by the petitioner pursuant to agreement of its board of directors entered into on May 1, 1929. The assignment to the petitioner of the leasehold, which was subject to the terms of the agreement between petitioner's directors and the Shell Petroleum Corporation of May 11, 1929, was made by the Shell Petroleum Corporation on March 4, 1930.

The agreements referred to above were not placed in escrow and no escrow agreement was entered into by the parties affecting the title to the oil and gas leasehold here involved.

During 1929 the petitioner expended $17,282.06 for labor, teaming, hauling, supplies, fuel, water, repairs, and other ordinary and necessary business expenses in connection with the development and operation of the property above referred to. No part of this amount included any sums for equipment.

Under the authority granted by the respondent in article 243 of Regulations 74, the petitioner has elected to charge all items such as labor, teaming, hauling, supplies, fuel, water, repairs, and other ordinary and necessary business expenses in connection with the development of its oil and gas properties to expense and not charge the same to capital items. The election referred to in the preceding sentence does not apply to development expenses incurred by petitioner in connection with the drilling of a well or wells contracted for as consideration in connection with the acquisition of a lease.

In determining the deficiency the respondent has disallowed the deduction taken by the petitioner of $17,282.06 and has added it to the petitioner's investment in the property to be returned to petitioner through annual depletion charges.

The petitioner contends that, since it elected to charge expenditures for development to expense as authorized in article 243 of Regulations 74, the respondent erred in disallowing as a deduction the amount of $17,282.06. The respondent contends that the amount was properly disallowed for the reason that, although it was expended in connection with the drilling of an oil well, the petitioner in return for drilling such well was to receive and did receive an interest in an oil and gas lease. The petitioner denies that it contracted to pay the expense of drilling the oil well in return for an interest in the oil and gas lease.

The first question to be decided is whether the amount in controversy was expended by petitioner to acquire an interest in an oil and gas lease. According to the minutes of the meeting of the petitioner's board of directors held on May 1, 1929, its directors, Stubblefield, Pittman, and Austin, in entering into the agreement of May 11, 1929, with the Shell Petroleum Corporation and in carrying out its terms, were acting for and in behalf of the petitioner, and in a determination of the question before us the agreement between them and the Shell Petroleum Corporation we think is to be considered in substance as one between the petitioner and that corporation. The agreement of May 11, 1929, does not purport to be one by which the Shell Petroleum Corporation sold, transferred, assigned, or conveyed its interest in the lease in controversy, but by its terms was one in which that corporation *agreed* to sell and assign the lease upon the consideration stated therein. One of the considerations as stated in the third paragraph of the agreement was that the three directors of the petitioner would on or before June 5, 1929, begin the actual drilling of a well for oil and gas on the land involved, would drill such well with due diligence, at their sole cost and expense, to a depth satisfactory to the Shell Petroleum Corporation and, in event the well resulted in a producing well, would complete it at their sole cost and expense. By the terms of paragraph five of the agreement the Shell Petroleum Corporation, upon completion of the well according to the terms contained in paragraph three and upon being furnished with a satisfactory showing that there were no amounts unpaid for labor performed and material furnished in connection with the drilling and completion of the well, was to execute and deliver to the three directors of petitioner its assignment of the lease, without warranty of title, reserving to itself, however, by the terms of such assignment a certain overriding royalty interest

in the production from the land covered by the lease. By the terms of paragraph eight of the agreement the three directors of the petitioner were to carry on all operations on the land at their sole cost and expense and were to pay promptly all indebtedness incurred and to keep the premises free and clear of liens. Paragraph 14 of the agreement provided that upon the failure of the three directors of petitioner to perform any of the terms and provisions of the agreement within the time specified they should forfeit their rights thereunder, that the Shell Petroleum Corporation should be under no obligation thereafter to comply with the terms thereof, and that the directors should not thereby be relieved of any liability for damages occasioned to the Shell Petroleum Corporation by reason of such breach.

On March 4, 1930, the Shell Petroleum Corporation executed an instrument reading as follows:

WHEREAS, on the 7th day of June, 1924, a certain oil and gas mining lease was made and entered into between W. D. JORDEN, ET AL., as Lessors, and ROXANA PETROLEUM CORPORATION (now SHELL PETROLEUM CORPORATION) as Lessee, covering the following described land situated in Carson County, Texas, towit: Southeast Quarter (SE¼) Section 104, Block 4, I. & G.N. Railroad Company Survey, said lease being recorded in Volume 29, Page 405, Deed Records of Carson County, Texas; and

WHEREAS, under date of May 11, 1929, SHELL PETROLEUM CORPORATION, J. E. STUBBLEFIELD, E. M. PITTMAN, and C. R. AUSTIN entered into an agreement affecting the above described lease, which contract is made a part hereof by reference.

Now, THEREFORE, for and in consideration of One Dollar ($1.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, the undersigned, the present owner of said lease and all rights thereunder or incident thereto, does hereby *bargain, sell, transfer, assign and convey* (subject to the reservations hereinafter set forth) unto NUNN-STUBBLEFIELD OIL COMPANY, its successors and assigns, all of the right, title, and interest of the original Lessee and present owner in and to said lease and rights thereunder.

This assignment is made in accordance with and subject to all the terms and conditions of said contract dated May 11, 1929, between said SHELL PETROLEUM CORPORATION, J. E. STUBBLEFIELD, E. M. PITTMAN, and C. R. AUSTIN, and reserves to SHELL PETROLEUM CORPORATION overriding royalty as provided in Paragraph Sixth of said contract. [Italics supplied.]

Considering the provisions of the agreement of May 11, 1929, between the petitioner's three directors and the Shell Petroleum Corporation in connection with the provisions of the assignment of March 4, 1930, by that corporation to the petitioner, we are of the opinion that the expenditures made by the petitioner in developing a well on the land in controversy were for the interest actually transferred on March 4, 1930, in the lease theretofore owned by the Shell Petroleum Corporation. The provisions of the agreement of May 11, 1929, heretofore considered indicate that the interest thus ac-

quired was a consideration that moved to the petitioner as a result of its drilling the well. The right of the petitioner to receive an assignment of an interest in the lease was dependent upon the drilling of a well in conformity with the agreement of May 11, 1929. It seems clear that if it had not done so it would not have been in any position to have demanded the assignment to it of any right in the lease. It was only after the well had been drilled to the satisfaction of the Shell Petroleum Corporation that that corporation was bound to assign an interest in the lease. We do not have here the sale by the Shell Petroleum Corporation of a lease for a stated amount with a condition subsequent as to drilling of a well or wells. Here the well had to be drilled to the satisfaction of the Shell Petroleum Corporation before it was required to make any assignment respecting the lease.

The amount here in controversy was expended by the petitioner in drilling a well. This was a consideration paid by petitioner for the interest it received in the lease that was assigned to it by the Shell Petroleum Corporation. Do the provisions of article 243 of Regulations 74 permitting taxpayers to elect whether they will capitalize or will charge to expense certain development expenses of the nature here incurred by petitioner permit a taxpayer to charge such expenditures to expense in determining taxable net income where they were incurred in drilling a well which constituted a consideration for the transfer to the taxpayer of an interest in an oil and gas lease?

In *State Consolidated Oil Co.*, 19 B.T.A. 86; affirmed on a point similar to that here in controversy, 66 Fed. (2d) 648; certiorari denied, 290 U.S. 704, a taxpayer pursuant to a contract with the owners of certain lands made expenditures for drilling wells on the lands. Under the contract the taxpayer was to receive, at a date subsequent to their completion and as a part of the consideration for drilling the wells, an undivided one-half interest in the lands. The taxpayer urged upon the court that, under article 223 of Regulations 62, the pertinent parts of which are identical with the part of article 243 of Regulations 74 applicable here, it was authorized to treat the expenditures made in drilling the wells as deductible operating expenses. In denying the contention the court said:

The commissioner contends, however, that the Regulations were not intended to apply to one who drills a well upon land in performance of a contract to purchase an interest therein. In this contention we concur. The expenditures in controversy were merely to be exchanged for a capital asset or to be recouped out of the land. Nothing in the Regulations requires their application to such a case and the burden is upon the petitioner to show that the commissioner erred in denying their application here. In this, petitioner has

failed. The argument that the expenditures are similar in principle to expenditures made in drilling on one's own or leased land, a situation concededly within the Regulations, is without merit.

Where, as in the instant case, the consideration to be received by a taxpayer for drilling an oil and gas well is an interest in a lease owned by another, we think what the court said in *State Consolidated Oil Co.*, *supra*, is applicable and controlling as to the question of whether the expenditures incurred in drilling such well are deductible as expenses. We accordingly sustain the action of the respondent in disallowing the deduction in controversy.

*Judgment will be entered for the respondent.*