James E. LeSuer v. Commissioner. James E. LeSuer and Lucy J. LeSuer, Husband and Wife v. Commissioner. Elton C. Harder v. Commissioner. Montgomery E. Mitchell v. Commissioner. Lee Harder v. Commissioner.
LeSuer v. Commissioner
Docket Nos. 110810, 110811, 110812, 110813, 110814.
United States Tax Court
1943 Tax Ct. Memo LEXIS 141; 2 T.C.M. (CCH) 660; T.C.M. (RIA) 43398; August 25, 1943
*141 Petitioners, as lessees, agreed in an oil and gas lease to sink certain wells each year. Held, the drilling of the wells was part of the consideration for execution of the lease, and, consequently, the intangible costs thereof are capital expenditures and may not be deducted as business expenses under Regulations 94, article 23 (m)-16. John W. Sanborn, C.P.A., 528 Marine Trust Bldg., Buffalo, N. Y., for the petitioners. Henry J. Merry, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: The Commissioner determined the following deficiencies in income tax: Docket
No.
Petitioner
1937
1938
110810
James E. LeSuer
$ 53.62
110811
James E. and Lucy J.
LeSuer
$154.26
110812
Elton C. Harder
696.65
594.72
110813
Montgomery E. Mitchell
78.58
493.09
110814
Lee Harder
48.64
395.20 The sole question raised in these proceedings is the right of petitioners to deduct from their current income the intangible drilling costs incident to the sinking of certain oil wells. Other adjustments to petitioners' respective incomes are conceded by them. The returns were filed in the 28th district of New York. The facts have been stipulated and will be set *142 forth only in so far as may be necessary to decide the question presented. [The Facts] Petitioners, with the exception of Lucy J. LeSuer, are and, since September 15, 1937, have been members in equal shares of a joint venture known as Leemont Oil Co. By an agreement dated that day they became lessees of the oil, gas and minerals in, under and upon certain premises in Alleganyy County, New York, comprising approximately 84 acres, expressly reserving to the lessors, however, one-fourth of all the oil and gas produced and saved from the premises. The lease was for a period of 12 years from September 15, 1937, and so long thereafter as oil and/or gas might be produced in paying quantities. The lessors were James E. LeSuer, who owned a three-fourths interest, and one Burl N. Williams, who owned a one-fourth interest, in the oil, gas and minerals. At the time the lease was executed wells had been drilled on approximately 25 acres of the leased premises and the average daily production therefrom was considered to be three barrels per day. The lease agreement provided that until production should equal or exceed 12 barrels per day, the lessees would pay the lessors the one-fourth *143 royalty upon the basis of a 12-barrel per day average daily production, that is, three barrels per day. The lessees agreed to drill at least 12 wells on the leased premises within one year from September 15, 1937, and at least six further wells in each succeeding year until the whole property should be developed. Any excess wells drilled in any year could be applied to the requirements of succeeding years. It was expressly understood, however, that the obligation to drill was contingent upon the marketability of the oil produced and the maximum allowable production under any purchase contract. The lease provided that, at the option of either lessor upon 30 days' notice, the lease should become null and void as to that lessor upon breach of any covenant by the lessees, except the covenant to drill and develop. Upon default or failure of the lessees to drill as provided in the lease, such breach, at the election of either lessor and only as to the electing lessor, should operate as a surrender by the lessees of only that portion of the premises undrilled or undeveloped by the said lessees, the lease to remain operative as to the drilled and developed territory. In accordance with *144 the provisions of the lease the lessees drilled three wells between September 15, 1937 and December 31, 1937, and 15 wells between January 1, 1938 and September 15, 1938. The intangible drilling costs were $2,431.30 in 1937 and $17,981.07 up to September 15th in 1938. These wells developed approximately 16 and 7/10ths acres on which no wells had theretofore been drilled. From September 15, 1937 to December 31, 1937, the total oil production was 238 and 36/100th barrels and for the calendar year 1938, 2,454 and 30/100th barrels. Royalties were paid to the lessors in the amounts of $430.04 in 1937 and $2,115.41 in 1938. In computing its net losses for 1937 and 1938 upon partnership returns the Leemont Oil Company deducted the intangible drilling costs of $2,431.30 and $17,981.07, respectively, and petitioners deducted on their returns their distributive shares of the losses so computed. Respondent disallowed the deduction of such costs, holding that they were capital expenditures. [Opinion] The question raised in these proceedings has frequently been before this tribunal and the several Circuit Courts and no useful purpose would be served by a detailed discussion of the decisions. *145 In general they hold that the cost of drilling oil wells is not a current expense for income tax purposes if it constitutes a part of the consideration for the interest in oil properties under a lease agreement. A regulation of the Commissioner first promulgated in the early days of income taxation, and continued in substantially the same form, [1] has permitted the deduction of the intangible development costs of drilling an oil well. This privilege which a taxpayer might exercise at his option was not all-embracing, however, and where "the drilling costs constitute the consideration for the acquisition of the producing rights," they were regarded as capital expenditures to be recovered by way of depletion against production. G.C.M. 932, C. B. VI-1 (1927), p. 241. This principle is now definitely settled by the decisions in F. F. Hardesty, 43 B.T.A. 245, affd. 127 Fed. (2d) 843; United States v. Sentinel Oil Co., 109 Fed. (2d) 854; and Nunn-Stubblefield Oil Company, 31 B.T.A. 180. Indeed, the petitioners do not seriously question *146 these broad statements of the law but take the position that the requirement in their lease agreement to drill oil wells was not a part of the consideration for the granting of the lease but was a condition subsequent. It seems clear to us that the lessors would not have entered into a lease of this entire acreage without the agreement of the lessees to develop the tract, and the parties covenant and agree in a very specific way that this will be done. The promise to drill was as real and as valuable a part of the consideration for the granting of the lease as the provision for the payment of royalties. It follows that the cost of these wells is a capital outlay. The fact that title passed to the lessees on the execution of the contract before the wells were drilled is not important. United States v. Sentinel Oil Co., supra. The covenant to drill was a consideration for the passing of title to the land. *147 An alternative contention is made. Counsel for petitioners James E. LeSuer and his wife Lucy contends that as LeSuer was one of the lessors as well as one of the lessees he should be treated as an owner to that extent and, consequently, the deduction of intangible drilling costs should be allowed to him. The effect of this treatment would be to compute the net income of the joint venture in one manner in determining LeSuer's distributive share and in another way to determine the distributive share of the other members of that venture. The joint venture is a partnership for the purposes of the income tax levy and the income and deductions of a partnership must be computed as a unit and may not be figured differently for different members of the partnership. H. H. Wegener v. Commissioner, 119 Fed. (2d) 49, affirming 41 B.T.A. 857, requires that this issue be determined for respondent. Decisions will be entered for the respondent. Footnotes
1. Art. 23(m)-16. Charges to capital and to expense in the case of oil and gas wells. - (a) Items chargeable to capital or to expense at taxpayer's option: (1) Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. * * *↩