COATESVILLE BOILER WORKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

COATESVILLE BOILER WORKS, PETITIONER, *v.* COMMISSIONER OF

*Walter Biddle Saul, Esq.,* and *J. A. Lamorelle, Esq.,* for the petitioner.

*D. D. Shepard, Esq.,* for the respondent.

1244

1252

OPINION.

TRAMMELL: The principal issues involved herein may be divided into three groups of two each. The first group comprises the questions (1) whether the petitioner is entitled, in computing its taxable income for the fiscal year ended in 1917, to deduct as a business expense the amount of $54,845.99, paid to its officers and employees during that year as additional compensation for the fiscal years ended in 1915 and 1916, and (2) whether petitioner is entitled, in computing its taxable income for the fiscal year ended in 1918, to deduct as a business expense the amount of $51,326.18, paid to its officers and employees during that year as additional compensation for the fiscal year ended in 1916.

The second group comprises the questions (1) whether petitioner is entitled to have included in its invested capital for the fiscal year 1917, the amount of $106,172.17, part of which was credited to its officers as additional compensation and part of which was set up as a contingent fund, both amounts being charged against surplus prior to

---

[1] Depreciated balance at beginning of year.

the beginning of that year, and (2) whether petitioner is entitled to include in invested capital for the fiscal year 1918, the amount of $51,326.18, being the amount remaining in the contingent fund at the beginning of that year.

The third group comprises the questions (1) whether petitioner is entitled to include in its invested capital for the fiscal years and period in question the depreciated cost of plans, drawings, and tracings used in its business, and (2) whether it is entitled to include in invested capital for said fiscal years and period the depreciated cost of its pattern account. In connection with these principal issues, several minor or preliminary issues arise.

The only issue involving the calendar year 1920 relates to the profits tax insofar as it is affected by the reduction of invested capital on account of the deficiencies determined for the prior years. At the hearing, the parties stipulated that proper adjustments to invested capital for all years would be made on the basis of the deficiencies finally determined for the prior years. It is unnecessary, therefore, to give further consideration here to the deficiency for the calendar year 1920.

The issues raised with respect to the fiscal years ended in 1917 and 1918, and the three-month period ended December 31, 1918, will be considered in the order hereinbefore indicated.

During the fiscal year ended September 30, 1917, the petitioner paid to its officers and employees, on the dates and under the circumstances detailed in our findings of fact, *supra*, the total sum of $54,845.99 as additional compensation for the fiscal years 1915 and 1916. During the fiscal year ended September 30, 1918, petitioner paid to its officers and employees the total sum of $51,326.18 as additional compensation for the fiscal year 1916. Thus, during the fiscal years 1917 and 1918 petitioner so paid the aggregate amount of $106,172.17.

Petitioner contends that it kept its books of account on the basis of cash receipts and disbursements, and that, in computing its net income for each of said fiscal years, it is entitled to deduct as a business expense the amount so expended in each year, respectively. The respondent refused to allow the deductions claimed, or any part thereof, for the fiscal years 1917 and 1918, on the theory that the petitioner kept its books on the accrual basis, should have accrued said amounts in the fiscal years 1915 and 1916, and should have taken the deductions for those years.

The first question presented in this connection, therefore, concerns the basis upon which the petitioner kept its accounts, that is to say, whether petitioner kept its accounts upon the basis of cash receipts and disbursements, or " upon any basis other than that of actual

receipts and disbursements." The record contains no suggestion that the method actually used by the petitioner in keeping its accounts does not clearly reflect its income, and hence under the statute its tax must be computed upon its net income ascertained in accordance with such method.

The petitioner contends that, during the years here involved it kept its books of account and computed its net income on the basis of cash receipts and disbursements, while the respondent contends that the petitioner kept its books, computed its net income and made its tax returns on the accrual basis.

We have found, as set out in our findings of fact hereinabove, that the petitioner kept its books of account substantially on the accrual basis during the taxable years and period involved, although minor items of deferred charges and credits may not have been accrued. This conclusion is reached on the evidence in the record before us, which shows that in determining the cost of goods sold, the petitioner took into consideration opening and closing merchandise inventories; that goods were sold on credit, the amount being credited to sales and debited or charged to accounts receivable; that when payments were made on accounts receivable, such accounts were credited accordingly and the amounts debited or charged to cash; that when an account receivable was found to be uncollectible, the amount was charged as a loss and a deduction therefor taken in the petitioner's tax return. The books also included accounts payable, and notes receivable and payable, and such items were given consideration in computing net income.

In considering a similar situation in *Bartles-Scott Oil Co.*, 2 B. T. A. 16, we said:

The first question—that of whether the taxpayer kept its books of account on an accrual basis—is not difficult of solution. We found as a fact, above, that the taxpayer carried inventories and notes and accounts receivable and payable on its books, and in determining its income these items were given consideration. In view of these facts we can not hold otherwise than that the taxpayer operated on an accrual basis. The mere fact that some deferred charges and credits to income may not have been included in the accounts carried can not destroy the principle upon which the system of accrual bookkeeping is based.

See also *John F. Cook*, 4 B. T. A. 916.

At the hearing, after the introduction of considerable evidence tending to show that the petitioner kept its books on the accrual basis, counsel for the petitioner sought to show that its books were in fact kept on a sort of hybrid basis, or partly on the basis of cash receipts and disbursements and partly on the accrual basis, because of the fact that certain minor items consisting of interest, taxes,

insurance and work in process were not accrued. However, we are not convinced by this evidence that the method of accounting regularly employed by the petitioner in keeping its books was not fundamentally the accrual method. The evidence as a whole shows that the petitioner kept its books and computed its income on the accrual basis. The fact that some deferred items were not accrued may indicate defective bookkeeping, but can not change the fundamental basis upon which the books were kept.

The evidence also shows that the respondent, in determining the deficiencies involved herein, computed the petitioner's net income by the accrual method. Since that method appears in any event to approach more closely the predominating method employed by the petitioner, the action of the respondent in so computing the net income must be approved. *Maine Dairy Co.*, 4 B. T. A. 375.

Having determined that the petitioner kept its books of account and computed its net income by the accrual method, it follows that the amounts in controversy constitute lawful deductions from income only for the year or years in which the liability therefor was incurred. In order that an item may be accrued, the liability must actually be incurred in the taxable year. *William J. Ostheimer*, 1 B. T. A. 18.

A deduction can not be taken for a year in which the liability was not incurred. *Rex Machinery & Supply Co.*, 3 B. T. A. 182.

When was the liability here incurred? A careful consideration of all the facts and circumstances set out in our findings of fact, *supra*, leads us to the conclusion that petitioner incurred the liability in 1915 and 1916 to pay the respective amounts authorized for those years.

The facts show that the additional compensation in question was authorized by the directors' resolution of 1904, which was ratified and confirmed by the resolution of the stockholders of May, 1915. The services were rendered and the obligation to pay in accordance with the resolution became final. Just prior to the close of the fiscal year 1915, the amounts authorized for that year were formally accrued on the petitioner's books, and at that time there was no legal obstacle to the payment of the money.

With respect to 1915, therefore, it is our opinion that the petitioner incurred liability to pay the aggregate amount authorized for that year on September 14, 1915, when the amount was ascertained and entered upon the books.

On September 14, 1916, the amounts authorized for the fiscal year 1916 were accrued on the petitioner's books, although litigation was pending at that time and payment could not be made because of the stipulation entered into to prevent the issuance of an injunction.

However, in determining the year for which a deduction may be taken by a taxpayer on the accrual basis, the date of the actual payment is immaterial.

And with respect to 1916, it is our opinion that the petitioner incurred liability to pay the aggregate amount authorized for that year on September 14, 1916, when the amount was ascertained and entries were made on the books, notwithstanding litigation was then pending, which, at some time in the future, might or might not have the effect of defeating that liability in whole or in part. The corporation did not deny the liability, but contended at all times that it was legally responsible for the compensation. The litigation was instituted by a minority stockholder to prevent the corporation from paying the compensation agreed to be paid. The court of last resort in 1917 upheld the corporation and held that the compensation should be paid for that year in accordance with the resolution. The decision of the court, however, did not create the liability to pay. That liability existed by virtue of the fact that the corporation had agreed to pay and the fact that the services were rendered. The corporation itself had never denied its liability which existed in 1916. The court merely affirmed the action of the corporation. See *Percy K. Hexter*, 8 B. T. A. 888.

For the foregoing reasons we are impelled to conclude that the petitioner did not incur any liability with respect to the amounts in controversy during either of its fiscal years ended in 1917 or 1918, and is not entitled to a deduction of any amount from the income for those years on that account. Accordingly, the action of the respondent in denying the deductions claimed by the petitioner for 1917 and 1918 is approved.

The issues of the second group relate to the inclusion in invested capital of the amounts credited to the accounts of the officers and employees, and the amount credited to the contingent fund, on the books of the petitioner during the fiscal years 1915 and 1916. Of the total credits in the amount of $125,924.37, the amount of $19,752.20 was held by the courts not to be payable, and on August 20, 1917, this amount was charged against the officers' accounts and credited back to surplus. The respondent included in the computation of the petitioner's invested capital the amount of $19,752.20 so returned to surplus, but refused to include the other amounts, or any part thereof, credited to the accounts of the officers and employees, and the contingent fund. The petitioner contends that the aggregate net amount of $106,172.17 excluded by the respondent should be included in its invested capital for 1917. During the fiscal year 1917, the petitioner paid against said credits the amount of $54,845.99, thus

leaving to the credit of the contingent fund at the beginning of its fiscal year 1918 a balance of $51,326.18, which amount petitioner contends should be included in its invested capital .for the latter year.

Having reached the conclusion above set forth, that the petitioner incurred the liability on September 14, 1915, to pay the amounts authorized and accrued for its fiscal year 1915, and incurred the liability, on September 14, 1916, to pay the amounts authorized and accrued for its fiscal year 1916, petitioner is not entitled to include in its statutory invested capital for 1917 and 1918, any part of said amount of $106,172.17. Since the petitioner had incurred the liability to pay and had accrued on its books the aggregate net amount of $106,172.17 prior to the beginning of its fiscal year 1917, the amount on that date had ceased to be a part of the petitioner's invested capital. It then became an obligation or liability. It was owing to the officers and in effect was borrowed capital, which may not be included in the computation of its invested capital. A corporation is not entitled to include in invested capital items of salary credited to stockholders but not drawn by them. *Consolidated Electric Lamp Co.*, 1 B. T. A. 616. Such items represent borrowed capital, *Kelly-Buckley Co.*, 1 B. T. A. 1154. Accordingly, the action of the respondent, in respect of the issues of the second group, is approved.

The third group of issues relates to the inclusion in invested capital of amounts expended by the petitioner for (1) plans, drawings, and tracings, and (2) patterns, which were used by it in its business. The petitioner contends that it is entitled to include the depreciated cost of those items in its invested capital, while the respondent contends " that the petitioner has neither established the cost or the March 1, 1913, value of the plans and drawings in use and therefore is not entitled to include in invested capital the amount of $42,000 as contended for by the petitioner." And with respect to patterns, the respondent contends that " there is no competent evidence of record to warrant the conclusion that the petitioner is entitled to include in invested capital any amount on account of the purchase of patterns."

The evidence in the record before us discloses that it was necessary for the petitioner to prepare detailed plans, drawings, and tracings of each boiler or other article before its manufacture could be commenced. It was also necessary to make a pattern for each casting before it could be manufactured. These plans, drawings, and tracings, as well as the patterns, were thereafter carefully preserved and the former were kept in fire-proof vaults. In fact, so valuable did the petitioner regard the former that duplicates were kept in separate vaults, so that if one set should be destroyed, the other

would be available. After the manufacture of a particular article, the plans, drawings, and tracings were preserved for use in connection with the manufacture of duplicate orders in the future. The plans, drawings, and tracings were in many instances · also valuable in preparing the engineering data for the manufacture of similar, although not exactly duplicate, articles. During the years involved, approximately 20 per cent of the petitioner's gross business consisted of duplicate orders, executed from the old plans, drawings, tracings and patterns. These assets were actually used by the petitioner in carrying on its business from year to year, and had a useful life extending over an average period of 20 years. We think that these facts clearly establish that the expenditures in question were capital rather than expense. Such expenditures resulted in the acquisition by the petitioner of additional assets having a useful life of 20 years, and which were actively and continuously used by it in carrying on its business. In fact, the evidence justifies the conclusion that the petitioner could not successfully have operated its business without these assets.

In *Union Pacific R. R. Co.* v. *United States*, 99 U. S. 402, the Supreme Court said at page 420:

Theoretically, the expenses chargeable to earnings include the general expenses of keeping up the organization of the company, and all expenses incurred in operating the works and keeping them in good condition and repair; while expenses chargeable to capital include those which are incurred in the original construction of the works, and in the subsequent enlargement and improvement thereof.

In considering what constitutes a business expense and what constitutes a capital investment, we said, in *First National Bank of St. Louis*, 3 B. T. A. 807:

Generally speaking, items to be deductible [as business expenses] must be those ordinary and usual expenditures incurred in the conduct of a going business. * * * On the other hand, amounts expended for assets that are to continue in use in the business over several years are usually to be classified as capital items. * * *

It is shown that the assets here in question had a useful life of 20 years, and were actually used in the petitioner's business over that period. To constitute invested capital, it remains then only to determine their cost. The amount of salaries or wages paid to regular employees, while engaged exclusively in the creation of a capital asset, may be included in invested capital. *Gate City Coffin Co.*, 3 B. T. A. 226.

Here, however, the petitioner seeks to include in invested capital not only the cost of the patterns and the amount of the salary paid to its employes who were engaged exclusively in the preparation of

the plans, drawings, and tracings, but also the amount of $2,400 for each year, or one-half of the fixed salary paid to its president and chief engineer, as representing a proper allocation to the cost of the assets of the compensation paid him, on account of his supervision of the drafting room. It does not appear from the evidence that the duties of the president and chief engineer were generally different from those of a chief corporate executive officer, except that in addition to such duties he also supervised the engineering work or preparation of the plans, drawings, and tracings. No additional compensation was paid to him on account of such supervision.

In *Federal Plate Glass Co.*, 6 B. T. A. 351, we held that certain amounts, in addition to stated salaries, paid to the general manager and plant superintendent of the petitioner corporation for services in supervising the construction of plant buildings, were capital expenditures. In that connection we said:

To secure the services of these men for the purposes here indicated, the petitioner paid each of them the amount of $50,000, which was in addition to remuneration for services connected with the operation of the enterprise. We are of the opinion that these payments were capital expenditures and should be included in the computation of the petitioner's invested capital for profits-tax purposes in each of the taxable years.

Cf. *Grelck Condensed Buttermilk Co.*, 7 B. T. A. 79.

In each decision above cited, a definite amount, paid to the corporate officers exclusively for their services in that connection, entered directly into the cost of the capital assets. The evidence in the instant case is vague and uncertain with respect to the amount of time devoted by the president and chief engineer of the petitioner to the supervision of the work of preparing the plans, drawings and tracings. No additional compensation was paid to him for such services, and we are unable to say that any part of the compensation paid to its president and chief engineer may properly be included in the cost to the petitioner of said assets. The petitioner's contention on this point must, therefore, be denied.

In our findings of fact above, we have set out the amount which the evidence shows was actually expended by the petitioner in each year for patterns, and for the services of employees engaged exclusively in the preparation of the plans, drawings and tracings, which, in our opinion, constitute capital expenditures. The fact that those expenditures were improperly charged to expense, and so reported in the petitioner's tax returns, does not preclude the correction of the error here. The nature of the expenditure must be determined from the facts. *Union Metal Manufacturing Co.*, 1 B. T. A. 395; *Gilliam Manufacturing Co.*, 1 B. T. A. 967.

1260

In computing the petitioner's invested capital for the fiscal years ended in 1917 and 1918, and the three-month period ended December 31, 1918, there should be included the depreciated cost of (1) plans, drawings and tracings, and (2) patterns, based on the amounts of the yearly expenditures set out in our findings of fact above, the depreciation to be computed upon the basis of a useful life of 20 years.

Reviewed by the BOARD.

*Judgment will be entered on 20 days' notice, under Rule 50.*