EDWARDS DRILLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75931. Promulgated January 27, 1937.

*Walter E. Barton, Esq.,* and *J. L. Block, C. P. A.,* for the petitioner.

*L. W. Creason, Esq.,* and *R. B. Cannon, Esq.,* for the respondent.

OPINION.

DISNEY: Involved in the issue raised by the petitioner is the question of whether petitioner's tax liability should be determined on the cash or accrual basis of accounting. The petitioner claims it regularly employed the cash basis of accounting, not the accrual method, as determined by the respondent.

As part of its system of accounting, the petitioner maintained accounts designated notes receivable, accounts receivable, and others generally found in books kept according to the accrual method. It consistently entered expense items in its books as they were incurred, and all of such charges, except the one for Federal income tax, a nondeductible business expense, were taken into account in the computation of net taxable income. The fact that petitioner's books as of the close of 1931 did not reflect more receivables and payables was, as the evidence shows, due to prompt payment of liabilities and the nature of petitioner's business, rather than its adopted method of accounting. The evidence on the point sustains, rather than overcomes, the respondent's finding that the petitioner regularly employed the accrual basis of accounting. Accordingly, the petitioner's net income will be determined by that accounting method. See *Aluminum Castings Co.* v. *Routzahn*, 282 U. S. 92; *Nibley-Mimnaugh Lumber Co.*, 32 B. T. A. 791; *Louis Kamper*, 14 B. T. A. 767; *Coatesville Boiler Works*, 9 B. T. A. 1242.

The respondent argues that, the wells having been completed in 1931 pursuant to the contracts, in that year the petitioner definitely

established its right to payments out of oil and realized taxable income to the extent of the cash received, plus the fair market value of the contract right to future payments, against which it may apply "as its basis for determining its gain from said transactions in 1931, the cost of drilling the wells." The contention of the petitioner is that the drilling costs are deductible as ordinary and necessary business expenses and that, because of the indefinite and contingent character of the right to future payments out of oil, only the cash actually received is taxable as income.

Under the accrual method of accounting employed by the petitioner, items must be accrued as income when the events occur to fix the amount due and determine liability to pay. *United States* v. *Anderson*, 269 U. S. 422. The rule does not, however, extend to transactions in which the right is subject to contingencies which may never happen. "Generally speaking, the income-tax law is concerned only with realized losses, as with realized gains" (*Lucas* v. *American Code Co.*, 280 U. S. 445), and a taxpayer is under no obligation to pay a tax on income he might never receive. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417.

This exception to the general rule has been recognized in numerous cases. In *Commissioner* v. *Cleveland Trinidad Paving Co.*, 62 Fed. (2d) 85, affirming 20 B. T. A. 772, certain cities retained a percentage of the contract price for street paving to guarantee maintenance of the pavements for an agreed period. In holding that the amounts withheld by the cities were not taxable as income earned during the year in which the contracts were completed, the court remarked that "Until the expiration of the period of guaranty the obligations of the several municipalities remained only a contingent promise to pay."

Commissions on renewal premiums paid under policies of insurance written prior to March 1, 1913, do not constitute taxable income until received because of the contingent character of the right. *Woods* v. *Lewellyn*, 252 Fed. 106; *Workman* v. *Commissioner*, 41 Fed. (2d) 139, affirming 14 B. T. A. 1414.

In *McPherson* v. *Helvering*, 67 Fed. (2d) 749, affirming 22 B. T. A. 196, the partnership of which McPherson was a member performed services prior to March 1, 1913, in connection with the purchase and protection of timber lands for which it was to receive a percentage of the net profits "if, when, and as fast as" the lands were sold. The petitioner contended that the amounts received by the partnership for services rendered were not taxable until it had recovered the fair market value on March 1, 1913, of the right to future income. The Board and the court were unable to agree with this idea and taxed the amounts received under the contract during

the taxable years without any deduction for the alleged March 1, 1913, value of the contingent right to income.

In *E. F. Simms*, 28 B. T. A. 988, rights under oil leases were sold for cash and notes, together with a right to 400,000 barrels of oil produced from the property, if the land produced such an amount, and an overriding royalty on all oil produced. We concluded that the rights reserved to future payments in oil and money were contingent in character and, following the principle of *Burnet* v. *Logan*, 283 U. S. 404, did not represent property received or amounts accruable for the purpose of determining gain realized from the sale.

Here the petitioner's rights to receive the consideration for drilling the wells were contingent upon the happening of events which could not be foretold during the taxable period with any fair degree of certainty because of the nature of the mineral from the sale of which the money was to be paid. As we said in *E. F. Simms, supra*, "A 'gusher' of today may be a mere 'pumper' or even a dry hole tomorrow." In addition to this usual uncertainty that an oil well will continue to be a producer, the petitioner's rights to payment were subject to the possibility that the Railroad Commission of Texas would decrease the daily production of the wells. The owners of the wells were not at any time in 1931 under a definite obligation to pay, since no liability was to come into existence until oil produced and saved had been marketed. The promise of the owners of the wells to pay for the drilling thereof was, therefore, contingent. Throughout the taxable period it was doubtful whether the petitioner would ever receive its consideration. The risk was always present.

The fact that the rights had a fair market value does not of itself require that the amount thereof be accrued as taxable income. *Bedell* v. *Commissioner*, 30 Fed. (2d) 622; *Commissioner* v. *Darnell, Inc.*, 60 Fed. (2d) 82; *Teck Hobbs*, 26 B. T. A. 241; *Woods* v. *Lewellyn, supra; Workman* v. *Commissioner, supra*. See *E. F. Simms, supra*.

Under the facts in this case, we are of the opinion, and so hold, that only the cash actually received by the petitioner in 1931 for drilling the wells constitutes taxable income. Accordingly, it was error for the respondent to increase gross income by an amount for the contingent rights to future payments under the drilling contracts.

Under the alternative issue the respondent argues that the drilling costs "were capital in their nature", and under the provisions of section 24 (a) (2) of the applicable statute [1] and rulings of the courts

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) *General rule.*—In computing net income no deduction shall in any case be allowed in respect of —

\* \* \* \* \* \* \* .

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

and the Board are not deductible as ordinary and necessary business expenses.

The completion of producing wells results in the acquisition by the lessees of capital assets, the cost of which is recoverable through depletion deductions. *United States* v. *Dakota-Montana Oil Co.*, 288 U. S. 459. But it does not necessarily follow that the expense incurred by the petitioner in drilling the wells resulted in the acquisition by it of a like asset. The petitioner undertook to drill the wells not for itself, but for the lessees; hence upon their completion it had nothing as the result of its expense other than a claim for the contract price, payable out of the proceeds of oil and gas marketed from the wells. The petitioner so construed the contracts. It did not capitalize its outlay or enter the consideration for drilling the wells on its books as an account receivable. A contingent right to future income is not a capital asset. *Workman* v. *Commissioner*, *supra*, and *McPherson* v. *Commissioner*, *supra*. The petitioner was engaged extensively in a regular business, drilling oil or gas wells, and, considering the extent of its business and the fact that its books were kept on a consistent basis, we think that petitioner's income was reflected by its returns as nearly as possible under the circumstances.

If the expenses were capital expenditures, as respondent argues, then that which the petitioner received was capital. But in *Gilbert* v. *Commissioner*, 56 Fed. (2d) 361, the Circuit Court of Appeals for the First Circuit held that stock received by a contracting firm as pay for constructing a building was income and not a capital asset. The court took that view in spite of the fact that the stock was held for more than two years, adhering to the idea that it was property held by the taxpayer primarily for sale in the course of his trade or business. In the body of the opinion the court observed:

It is not uncommon for engineering or contracting firms to take their pay in stock, as the petitioners did in these cases. This stock was income when received; it remained income for two years; and thereafter it continued to be "property held by the taxpayer primarily for sale in the course of his trade or business."

The cases relied upon by the respondent to support his contention are clearly distinguishable from the instant case.

In *State Consolidated Oil Co.* v. *Commissioner*, 66 Fed. (2d) 648, certiorari denied, 290 U. S. 704, the taxpayer, as consideration for drilling a well, first recovered his cost of drilling and equipping the well and $1,400 out of sales of oil and gas, and thereafter, subject to no contingency, received an undivided one-half interest in the lots owned by the persons for whom the well was drilled, including the well and its equipment, and one-half of the proceeds derived from the sale of oil and gas produced by the well.

In *Consolidated Mutual Oil Co.*, 2 B. T. A. 1067, the expense involved the redrilling and deepening of an oil well by the owner thereof for his own account to put it on a productive basis. The cost was held to be a capital expenditure, recoverable through depreciation or depletion.

The case of *Old Farmers Oil Co.*, 12 B. T. A. 203, involved the drilling of a well for the taxpayer and we held that the transaction resulted in the acquisition by taxpayer of a capital asset.

In *Blockton Cahaba Coal Co. v. United States*, 24 Fed. (2d) 180, the expenditure was made by the taxpayer to increase the depth of a coal mine and it was held that the cost should be included in invested capital.

The case of *Nunn-Stubblefield Oil Co.*, 31 B. T. A. 180, is like *State Consolidated Oil Co. v. Commissioner*, *supra*, except that as consideration for its drilling operations the taxpayer acquired an interest in an oil and gas lease, dependent upon no contingency.

The petitioner properly deducted the cost of drilling the wells as an ordinary and necessary business expense.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

LEECH, dissenting: In my opinion, the petitioner in this case occupies a position no different from that of any other purchaser of oil payment contracts. Certainly, it would not be held that a bank purchasing contracts of this character for cash, as is often done, has expended that money as an ordinary and necessary business expense and not as the cost of a capital asset. The use of labor and material, instead of money, in the acquisition of these oil payment contracts, in my judgment, does not justify any different conclusion. *Burnet v. Logan*, 283 U. S. 404.

Any other treatment results in a clear distortion of income, as repugnant to the controlling law as it is to common sense.