COOK DRILLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82231.  Promulgated August 9, 1938.

*W. M. Shaw, C. P. A.,* for the petitioner.
*John H. Pigg, Esq.,* for the respondent.

### OPINION.

TYSON: The respondent has determined a deficiency of $5,548.04 in the petitioner's income tax for the year 1932.

The petitioner reported the amount of $1,893.11 as its income derived from certain oil payment contracts, arrived at (1) by includ-

ing in gross income only the amounts collected in 1932 under drilling contracts completed in that year and under a contract of sale of two leases, and (2) by deducting the drilling cost of wells completed in 1932 as an expense, and the cost of the leases sold. The respondent determined that the petitioner derived an income of $46,302.59 during 1932 under its oil payment contracts.

The petitioner alleges that the respondent erred (1) in including in its income for 1932 the fair market value of future oil payments to be received under contracts for drilling oil wells and a contract of sale of two leases, minus the drilling cost of wells completed in 1932 and the cost of the leases sold; (2) in including in its income for 1932 that proportion of the oil payments collected in 1932 represented by the ratio between the fair market value of the oil payment contracts and the face amount thereof, and (3) in failing to allow a deduction for depletion.

By amended answer the respondent alleges that if he erred in his determination, then, in the alternative, the petitioner derived income, under its oil payment contracts, in the amount of $39,451.59, based upon the inclusion in income of oil payments collected during 1932, less an allowance for depletion. The petitioner's reply denies that it derived income in such alleged amount from that source and denies the correctness of respondent's computation of the allowance for depletion.

This proceeding has been submitted upon a stipulation of facts which, together with the several exhibits attached thereto, is adopted as our findings of fact and included herein by reference. A brief resumé of the facts will suffice for the purpose of this opinion.

The petitioner, an Arkansas corporation organized in 1925, is, and was during the calendar year 1932, engaged in the business of operating oil and gas wells and in drilling oil and gas wells for others under contract. On its books, kept on the accrual basis, the petitioner accrued the total contract price receivable out of oil, as gross income in the year its drilling contracts were completed. Also, it accrued the total drilling costs paid or incurred as an expense in the year the drilling contracts were completed.

On October 10, 1931, the petitioner entered into a contract with the Sonbar Corporation for the drilling of not less than four and not more than six oil wells on the Finney lease, embracing land located in Texas. The contract provided that the petitioner would be paid the sum of $11,200 "as compensation for its services in drilling each well" and that such sum "shall be paid from, and only from, the proceeds of seven-sixteenths ($\frac{7}{16}$ths) of the first oil and/or gas produced, saved and marketed from the Finney lease." The contract

did not provide for the execution by the Sonbar Corporation of an assignment or conveyance to petitioner of a fractional interest in the Finney lease or the oil and gas in the described premises. Under that contract wells Nos. 1 and 2 were completed prior to December 31, 1931, and wells Nos. 3 to 6 were completed during the calendar year 1932.

On April 12, 1932, the petitioner entered into a contract with the Bussa Co. for the drilling of an oil well by petitioner on the W. P. Brett farm situated in Texas and the drilling of that well was completed prior to December 31, 1932. The contract provided that the contract price for the petitioner's services "shall be paid by an assignment of oil in the amount of Eleven thousand five hundred ($11,500) dollars * * *; the said payment to be made out of twenty-one-one hundred twenty-eighths (21/128ths) of all of the oil and gas produced, saved and sold from the premises hereinabove described." The stipulated facts disclosed the amount of money collected by the petitioner under that contract during 1932. The record does not disclose whether the Bussa Co. ever executed an assignment to petitioner of an interest in the oil and gas in the described premises.

Under the terms of their respective contracts no personal liability to pay petitioner its agreed compensation in the event no oil was produced was imposed either on the Sonbar Corporation or the Bussa Co.

In the early part of 1932 the petitioner acquired two oil and gas leases known as the Alford and Shaw leases, embracing land situated in Texas. On August 1, 1932, the petitioner entered into a contract by the terms of which it sold those two leases to the Central Oil Corporation, for a total consideration of $65,932.72 to be paid by and only by the proceeds from "an undivided three-fourths of $\frac{7}{8}$ of the oil and gas * * * when, as and if * * * produced, marketed and sold", from the lands described in the contract. The contract imposed no personal liability on the Central Oil Corporation for the payment of the agreed purchase price, except such liability as might arise out of the exercise by petitioner of an option to declare any remaining amount unpaid to be due and payable upon the breach of any of its covenants by the Central Oil Corporation, such as the payment of taxes, the proper operation and maintenance of the leases, and compliance with lawful rules and regulations imposed by any lawful authority as regards the operation and development of the leases. Such contingent personal liability is not material to the question here involved. The contract required the Central Oil Corporation to execute, in favor of petitioner, an assignment to enforce and carry out the agreement as to petitioner's right to receive the

specified oil payments from the date of the contract until full payment of the agreed purchase price. The sale and transfer by petitioner of those leasehold interests to the Central Oil Corporation was effective as of August 1, 1932, but for certain reasons, not material here, the formal assignment by the latter in favor of petitioner, as required by the contract, was not executed until November 30, 1932. Such formal assignment recited that the interest in the oil and gas therein conveyed by the Central Oil Corporation to petitioner, "shall be absolute" and that the petitioner "shall be entitled to all of said interest in the oil and gas so produced, saved and marketed until" the petitioner "shall have received from the sale of said oil and/or gas so produced, saved and marketed the full sum of * * * $47,736.08, * * * whereupon the interest of" the petitioner "therein shall cease and terminate." The difference between that sum of $47,736.08 and the agreed consideration of $65,932.72, or the amount of $18,-196.64, represented proceeds received by petitioner out of oil runs from August 1, 1932, the effective date of the contract of sale to the Central Oil Corporation, to November 30, 1932, the date of the formal assignment to petitioner by that corporation. The assignment imposed no personal liability on the Central Oil Corporation for the payment of the agreed purchase price except such as is hereinabove set out as being provided in the contract of sale.

The stipulation sets forth tabulations which show, as to each of the six wells drilled on the Finney lease, the one well drilled on the Brett farm, and as to the sale of the Alford and Shaw leases, respectively, (A) the contract price, plus extras, for drilling the wells and for the sale of the leases, (B) the cost to petitioner of drilling the wells and the cost to petitioner of the leases sold, and (C) the agreed fair market values of the future payments out of oil under the drilling contracts and under the contract of sale of the leases at the time of their acquisition by petitioner, as of the dates of the completion of the wells and the sale of the leases. The stipulation also sets forth a tabulation which shows, as to each of the seven wells and as to the Alford and Shaw leases, respectively, the amounts of money received by petitioner during 1931 and 1932, under those contracts for drilling the wells and the contract for the sale of the leases.

The petitioner contends (1) that it realized no taxable income in 1932, based upon the fair market value of the future oil payments to be received under its drilling contracts and its contract of sale and assignment, (2) that it is entitled to deduct in 1932 the drilling costs as an expense when incurred and also the cost of the leases sold in that year, and (3) that, having acquired an economic interest

in the leasehold, it is entitled to depletion on oil payments when received.

The contracts for drilling the seven oil and gas wells and also the contract for the sale of the two oil and gas leases provided for future payments payable only out of the proceeds of oil if, as, and when produced. The petitioner's right to receive such future oil payments was wholly contingent upon the happening of unpredictable future events which might never occur. In 1932 the amounts which would be received by petitioner under those contracts were not certain or ascertainable and the petitioner was not required to accrue as income for 1932 amounts which it might never receive. *Burnet* v. *Logan*, 283 U. S. 404; *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Edwards Drilling Co.*, 35 B. T. A. 341; affd., 95 Fed. (2d) 719; *Willis R. Dearing*, 36 B. T. A. 843. Following these controlling authorities, we hold that the respondent erred in including in the petitioner's gross income for 1932 the fair market value of the above mentioned contracts for future oil payments; and we further hold, upon authority of *Edwards Drilling Co.*, *supra*, and *Willis R. Dearing*, *supra*, that all the amounts actually received by petitioner during 1932, under its drilling contracts, the contract of sale, and the assignment, constituted gross income for that year, notwithstanding that the parties have stipulated what the fair market value was of the future payments out of oil to be made under the contracts and assignment.

Upon authority of *Edwards Drilling Co.*, *supra*, we hold that the petitioner properly deducted, as a business expense for 1932, the costs incurred in drilling wells completed during that year.

The petitioner contends that it is entitled to the statutory allowance for depletion, under section 114 (b) (3) of the Revenue Act of 1932,[1] based upon its proportionate share, pursuant to its oil payment contracts, of the proceeds derived from the production of oil and gas from the properties embraced in its drilling contracts as well as from the properties embraced in its contract of sale and the assignment with regard to the Alford and Shaw oil and gas leases.

With respect to petitioner's income from oil payments under its drilling contracts with the Sonbar Corporation and the Bussa Co.,

[1] SEC. 114 (b) (3)—PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

respectively, such contention can not be sustained. The statutory allowance for depletion is predicated upon the receipt of gross income from the operation of oil and gas wells, by one who has a capital investment in the oil and gas in place and may not be allowed to one who has no such capital investment but only an income derived from production, through a contractual relation or personal covenant with the owner of the mineral deposit. *Helvering* v. *Bankline Oil Co.*, 303 U. S. 362; *Helvering* v. *O'Donnell*, 303 U. S. 370; *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372.

Prior to the execution of its drilling contracts with the Sonbar Corporation and the Bussa Co. the petitioner owned no interest in the oil and gas in place or the leases embracing the premises described in those contracts, and, accordingly, unless under such contracts the petitioner became the owner of such an interest, it is clear that under the above cited authorities, petitioner is not entitled to the deduction claimed for depletion. The petitioner did not acquire such an interest under its drilling contracts, since both of those contracts called for the performance of certain services by the petitioner in consideration of a specified compensation to be paid out of the proceeds from the production of oil and gas, and established merely a contractual relation with the owners of the leases and did not purport to grant or convey to petitioner an interest in the leases themselves.

In *Edwards Drilling Co.*, *supra*, we said:

The completion of producing wells results in the acquisition by the lessees of capital assets, the cost of which is recoverable through depletion deductions. *United States* v. *Dakota-Montana Oil Co.*, 288 U. S. 459. But it does not necessarily follow that expense incurred by the petitioner in drilling the wells resulted in the acquisition by it of a like asset. The petitioner undertook to drill the wells not for itself, but for the lessees; hence upon their completion it had nothing as the result of its expense other than a claim for the contract price, payable out of the proceeds of oil and gas marketed from the wells.

In the instant case the owners of the oil and gas in place, the Sonbar Corporation and the Bussa Co., respectively, with whom petitioner entered into its drilling contracts, did not execute to petitioner an assignment of an interest in the oil and gas in place, as was the fact in *Willis R. Dearing*, *supra*, which case, for that reason, is distinguished from the instant case.

With respect to petitioner's income from oil payments under its contract of sale of the Alford and Shaw oil and gas leases to the Central Oil Corporation and the latter's assignment to petitioner, we hold, upon authority of *Thomas* v. *Perkins*, 301 U. S. 655, that the petitioner withheld and reserved an undivided ¾ of ⅞ of the oil and

gas in place and to be produced, marketed and sold up to an amount sufficient to yield $65,932.72, and, further, that petitioner is entitled to the depletion allowance provided by section 114 (b) (3), *supra.* See *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312; *Commissioner* v. *Fleming*, 82 Fed. (2d) 324–327; *Commissioner* v. *Williams*, 82 Fed. (2d) 328.

Petitioner in its 1932 return deducted the entire cost of the Alford and Shaw leases, $34,115.90, from gross income. Manifestly, that was improper. If petitioner were entitled to deduct its entire cost of the leases, there would be nothing to deplete in 1932 as to the "in oil" payments from these leases. The amount received from such payments was only $21,514.75 and if petitioner had the right to deduct the entire cost of the leases, there would be a minus quantity in its income, so far as these leases are concerned.

When a taxpayer reserves an interest in oil in place, as did petitioner when it sold the Alford and Shaw leases for $65,932.72 to be paid "out of an undivided three-fourths of seven-eighths of the oil and gas produced, marketed, and sold from the leases, etc.", it is entitled to recover its cost by way of depletion and not by way of deduction of the cost of the leases from gross income. Of course, under percentage depletion a taxpayer may recover, in some instances, much more than cost. For example, the lease may have cost the taxpayer but little, if anything, yet if he retains such an interest as entitles him to depletion, he is entitled to his 27½ percent of the gross income of the property, as a deduction, subject to the limitations provided in section 114 (b) (3), *supra*, even though that may be much greater than cost. On the other hand, a taxpayer is entitled to a return of his full cost by way of depletion, even though depletion figured on the percentage basis will not yield him that much. Cf. *Mountain Producers Corporation*, 34 B. T. A. 409; affd., 303 U. S. 376. *Transcalifornia Oil Co., Ltd.*, 37 B. T. A. 119. The last clause of section 114 (b) (3), *supra*, makes certain that result.

Depletion on the $21,514.75 "in oil" payments received by petitioner in 1932 from the Alford and Shaw leases should be computed in accordance with the views herein expressed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*