H. W. Lancaster and Daisy L. Lancaster v. Commissioner.
H. W. Lancaster & Daisy L. Lancaster v. Commissioner
Docket No. 24536.
United States Tax Court
1952 Tax Ct. Memo LEXIS 39; 11 T.C.M. (CCH) 1108; T.C.M. (RIA) 52325; November 17, 1952
*39 During the year 1944, petitioner, H. W. Lancaster was one-half owner of the partnership H. W. Lancaster and Company of Memphis, Tennessee. The partnership was engaged in the business of installing plumbing, heating and air conditioning equipment. The partnership kept its books on an accrual basis and used a fiscal year ending June 30th. During its fiscal year ending June 30, 1944, the partnership had a subcontract with a prime contractor, S. & W. Construction Company. Held, that $76,500.02 of its contract price with S. & W. Construction Company for work performed did not accrue as income until its fiscal year ending June 30, 1945, and the partnership was correct in accruing this $76,500.02 as part of its income for that fiscal year and the Commissioner erred in determining that the amount accrued in the fiscal year ending June 30, 1944. John A. Osoinach, Esq., for the petitioners. Homer F. Benson, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $34,077.23 in petitioners' income taxes for the calendar year 1944. Most of the adjustments arise from respondent's determination "that the method of accounting employed by the partnership, H. W. Lancaster and Company, does not clearly and properly reflect its income. Section 41 of the Internal Revenue Code." The Commissioner has adjusted petitioners' income from the partnership as reported on their return for 1944, as follows: Net income as disclosed by the return (Form 1065) for the taxable
year ended June 30, 1944
$97,714.76
Unallowable deductions and additional income: (1) Accrued income
$83,779.87
Nontaxable income and additional deductions: (2) Accrued income
540.31
Net adjustment to income
83,239.56
Corrected partnership income
$180,954.32
Your pro rata share: Salary
$11,400.00
Ordinary net income
81,427.16
Total
$92,827.16
Amount reported on your return
51,207.38
Increase in your income
$41,619.78
*41 The only adjustment in issue here is explained in the deficiency notice as follows: "(1) Income accrued during the taxable year ended June 30, 1944 and reported in the taxable year ended June 30, 1945 $83,779.87." Petitioners take the following position in their petition: "A. The Commissioner erred in determining that taxable income for 1942 and 1944 should be increased in the amount of $1,859.31 and $41,619.78 respectively; and that taxable income for the years 1943 and 1945 should be decreased in the amount of $17,938.00 and $41,166.94 respectively. The said increases and decreases are based on the determination that the method of accounting employed by the partnership, H. W. Lancaster & Co., of which H. W. Lancaster was a partner, does not clearly and properly reflect its income. "In the alternative, it is contended that if it was within the discretion of the Commissioner to make such changes in determining the taxable income for the years 1942, 1943, 1944, and 1945, determination of the tax set forth in the notice of deficiency is based upon the following errors: "A. The Commissioner erred in not reducing the income of H. W. Lancaster & Co. for the year ended June 30, 1942 by *42 the amount of the income accrued at June 30, 1941, or $23,472.92. "B. The Commissioner erred in increasing the income returned by H. W. Lancaster & Co. for the year ended June 30, 1944 by the amount of the items due under a contract with S. & W. Construction Co., which items amounted to $76,500.02, and were the subject of controversy at June 30, 1944." The respondent has not determined any deficiencies for 1941, 1942, 1943 or 1945. Respondent contends that the Court has no jurisdiction to consider petitioners' alternative contention A. supra, with respect to 1941 and 1942, and petitioner abandons his argument with reference thereto in his brief. In the brief petitioners limit the initial as well as the alternative contention to the accrual of $76,500.02 of the $83,779.87 additional 1944 partnership income which is in issue here. Petitioner being one of the two equal partners has to return only one half of the H. W. Lancaster and Co., partnership income which accrued in the fiscal year ending June 30, 1944. Therefore, it is one half of the $76,500.02 above-mentioned which is in issue so far as petitioner is concerned. Findings of Fact The petitioners, H. W. and Daisy L. Lancaster, *43 husband and wife, are residents of Memphis, Tennessee. The returns were filed with the collector of internal revenue for the district of Tennessee, Nashville, Tennessee. They filed a joint Federal income tax return, in which income was reported on the cash receipts and disbursement basis, for each of the calendar years 1942 to 1945, inclusive. During the period 1942 to July, 1945, H. W. Lancaster, hereinafter called the petitioner, was the managing partner of a partnership composed of himself and L. L. Diehl. The partnership conducted business under the firm name of H. W. Lancaster & Co., hereinafter called the partnership Lancaster, and was located in Memphis, Tennessee. The partnership Lancaster was engaged in the business of installing plumbing, heating, and air conditioning equipment. The partnership Lancaster kept its books and records on an accrual method of accounting and for fiscal years ended June 30, and filed its partnership returns on that basis. In December, 1943, the S. & W. Construction Company, hereinafter called S. & W., of Memphis, Tennessee, had what is known as a "lump sum contract" with the Firestone Tire & Rubber Company, hereinafter called Firestone, to build *44 an addition to its plant in that city. On or about December 23, 1943, the partnership Lancaster entered into a subcontract, hereinafter called the subcontract, with S. & W. to install certain equipment in the addition to Firestone's plant. The contract between subcontractor partnership Lancaster and S. & W. was oral, but certain provisions were set forth in a letter confirming the contract between the two parties. The contract between the partnership Lancaster and S. & W. was on the cost plus basis. The work was begun by the partnership Lancaster in January, 1944, and continued until the contract was completed on about June 15, 1944. According to the custom in the business, in instances of contracts requiring more than one month to complete, the partnership Lancaster prepared statements of account for work performed during the month on the basis of the estimated cost of the work performed, plus profit allowed, and billed S. & W. for the amount. Under this subcontract which the partnership Lancaster had with S. & W., it was part of the agreement that the subcontractor should look exclusively to the prime contractor for payment, the subcontractor having no contractual relationship *45 whatever with Firestone, and it was likewise part of the agreement that the subcontractor should not be entitled to demand or receive any payments from the prime contractor until the prime contractor was paid by Firestone. The amount due the partnership Lancaster under the subcontract, as shown on the monthly statement of account, was entered as an account receivable on its books. The partnership Lancaster was paid for work performed under the subcontract by check drawn by S. & W. on its bank account. On receipt of the monthly statements from the partnership Lancaster, S. & W. set up the amount of the statement as a liability on its accounts payable ledger. By June 30, 1944, S. & W. had been billed for the full amount claimed by the partnership Lancaster as due and owing under this subcontract. Firestone, during the last month of the fiscal year ended June 30, 1944, was contesting the subcontractor's charges as excessive, was raising questions as to the propriety of charging job overhead, and was also contending that the percentages used for allocating home office overhead to this subcontract were incorrect. The subcontract was terminated in June, 1944, and Firestone did not pay *46 the amount due the prime contractor on account of the balance unpaid on the subcontractor's work until July 5, 1944, which was after the beginning of the partnership's new fiscal year ending June 30, 1945, and S. & W. did not pay the partnership Lancaster until July 10, 1944, its check being received by the partnership Lancaster on July 12, 1944. The subcontractor employed John Rawlings, a Memphis auditor, to make a reaudit of the matters in controversy with Firestone. An agreement was reached in November, 1944, and an adjustment was made in the spring of 1945, by which the partnership reimbursed the prime contractor for chargebacks in the amount of $7,526.37 which it had received from Firestone for the account of the subcontractor. The partnership Lancaster was terminated on June 30, 1945. The partnership Lancaster was paid promptly by S. & W. for all estimates submitted except the last two which were in the amounts of $108,818 as of May 30, 1944, and $21,478.70 as of June 15, 1944. S. & W. paid the partnership Lancaster on account $50,000 on June 26, 1944 and $80,404.98 on July 10, 1944. These payments on account were recorded accordingly on the books of both S. & W. and the *47 partnership Lancaster. By these two payments the partnership Lancaster was paid in full for its work under the subcontract, including all the amounts contested by Firestone. In spite of a little delay, the partnership Lancaster was paid in due course for its work by S. & W. However, it was understood by the parties in accordance with business custom that the partnership Lancaster would reimburse S. & W. in the event any adjustment was made on account of Firestone's alleged overcharges. The partnership Lancaster reported income of $76,500.02 from the S. & W. contract in the fiscal year ending June 30, 1945, and the petitioners reported their portion of this profit in their tax return for the calendar year 1945. Opinion BLACK, Judge: Our findings of fact show that of the $130,296.70 which the partnership Lancaster billed S. & W. toward the close of its fiscal year ending June 30, 1944, $50,000 was paid to the partnership prior to June 30, 1944. That $50,000 the partnership accrued as income for its fiscal year ending June 30, 1944. It is not in controversy here. Of the balance of the $130,296.70 billed to S. & W., $76,500.02 is in controversy. Petitioner contends that this $76,500.02 *48 accrued as income to the partnership Lancaster during its fiscal year ending June 30, 1945. Respondent has determined that the partnership Lancaster should have accrued this $76,500.02 as income for its fiscal year ending June 30, 1944. Both parties agree that the partnership Lancaster has properly reported its income on the accrual basis and the question is limited to the year in which the income in question should be accrued. Petitioner contends that Firestone owed S. & W. $76,500.02 on June 30, 1944, under the prime contract on account of the subcontract with partnership Lancaster, and the partnership Lancaster was not entitled to receive payment from S. & W. until S. & W. was paid. As a matter of fact it appears that Firestone owed S. & W. $130,296.70 on July 1, 1944 for work which the partnership Lancaster had performed. However, S. & W. had already paid the partnership $50,000 of this amount ahead of time and that is not in controversy and of the balance, petitioner is only claiming $76,500.02 as an accrual in the fiscal year ending June 30, 1945. It is petitioner's contention: (1) That under the partnership's subcontract, it was required to look to the prime contractor *49 for payment and that it had no legal right to demand or to receive payment from the prime contractor until the prime contractor had first received payment from the owner; (2) That the prime contractor was not paid the items aggregating $76,500.02 until July 5, 1944, after the close of the fiscal year ended June 30, 1944; (3) That the prime contractor did not pay said amount to the partnership until July 10, 1944, which was within the partnership's fiscal year ended June 30, 1945; (4) That the above-mentioned contract provision constituted a condition precedent to any liability upon the part of the prime contractor to pay the subcontractor; (5) That there could be no accrual of said item as partnership income until such condition precedent was fulfilled and the subcontractor-partnership acquired a legal right to demand and receive its payment from the prime contractor, which right did not come into being until after the close of the fiscal year ending June 30, 1944. After a careful examination of the facts brought out at the hearing we think petitioner must be sustained in the above contentions. Both parties are in agreement that the partnership Lancaster was on an accrual basis and *50 that its income and deductions must be computed on that basis. As a general proposition under the accrual method of accounting items must be accrued as income when the events occur to fix the amount due and determine the liability to pay. United States v. Anderson, 269 U.S. 422. As stated in Spring City Foundry Co. v. Commissioner, 292 U.S. 182, "It is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues." If the events do not occur to fix the amount due and determine liability to pay there is no accrual. Commissioner v. R. J. Darnell, Inc., 60 Fed. (2d) 82; Commissioner v. Edwards Drilling Co., 35 B.T.A. 341, aff'd 95 Fed. (2d) 719; Commissioner v. Cleveland Trinidad Paving Co., 62 Fed. (2d) 85. We do not understand that there is really any dispute between the parties as to the correct principles which govern accrual accounting. Their dispute is as to the construction of the facts which are in evidence. Under the facts which are in evidence, it seems to us that the partnership *51 Lancaster cannot be properly required to accrue the $76,500.02 in question until Firestone paid this amount to S. & W. That was on July 5, 1944 which fell in the partnership fiscal year which ended June 30, 1945. That was the first time that S. & W. became legally obligated to pay Lancaster. It was the first time that Lancaster had a legal right to demand payment from S. & W. and to sue for it if payment was refused. In our findings of fact, we have found that: "* * * Under this subcontract which the partnership Lancaster had with S. & W., it was part of the agreement that the subcontractor should look exclusively to the prime contractor for payment, the subcontractor having no contractual relationship whatever with Firestone, and it was likewise part of the agreement that the subcontractor should not be entitled to demand or receive any payments from the prime contractor until the prime contractor was paid by Firestone." This finding is based on the testimony of H. W. Lancaster, managing partner of the partnership Lancaster, and of Eric Schmied, president of S. & W., and Mrs. Bessie Peel, secretary and treasurer of the S. & W. For reasons already stated, we think this finding *52 lisposes of the case in petitioner's favor. We so hold. It will be noted that in our statement of how the Commissioner determined the deficiency, that the Commissioner increased petitioner's income by $41,619.78. Apparently petitioner only contests $38,250.01 of this amount which is one half of $76,500.02. As we have already pointed out petitioner was one-half owner of the partnership Lancaster and he is taxable on only one half of the income of the partnership. Decision will be entered under Rule 50.