T. W. LEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HELEN LEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 95020, 95021. Promulgated November 15, 1940.

*Harry C. Weeks, Esq.,* and *R. B. Cannon, Esq.,* for the petitioners.
*James H. Yeatman, Esq.,* for the respondent.

OPINION.

TURNER: In his determination of the deficiencies the respondent included in gross income the full amount of collections under the ten oil payment contracts and allowed deductions for depletion with respect to each as shown in our findings of fact. The petitioners have alleged that the respondent erred in his inclusion in gross income of the full amounts collected, claiming that they are entitled to recoup the costs of their oil payment contracts before the amounts received are to be included in gross income. The respondent denies that he erred as petitioners allege, and further, by affirmative allegations, claims that he was in error with respect to the allowance of depletion deductions. By the second amended answer, which is the final answer herein, he admits that petitioners are entitled to depletion allowances with respect to oil payments Nos. 1, 6, 9, and 10, but alleges that it was error to allow similar deductions with respect to the six remaining payments.

The stated purpose for the motion for leave to file the second amended answer was to request application of our decision in *F. H. E. Oil Co.*, 41 B. T. A. 130, which had been promulgated subsequent to the hearing in these proceedings but prior to the filing of the briefs. In his brief filed at the time of filing the second amended answer, the respondent took the position that, while oil payments 1, 6, 9, and 10 represented an economic interest in the oil in place, *Thomas* v. *Perkins*, 301 U. S. 655, and by reason thereof petitioners were entitled to depletion with respect to those payments, the six remaining payments did not represent any interest in the oil in place because of the lack of formal words of assignment of such an interest, *F. H. E. Oil Co.*, *supra*, and with respect to the said remaining oil

payments petitioners were not therefore entitled to any allowance for depletion.

The substance of petitioners' argument seems to be that there is no sound basis for distinguishing between an oil payment contract where the agreement is to pay a specified amount out of oil, if, as, and when produced, and another oil payment contract where there are apt words of assignment or conveyance of oil to be produced until the amount specified has been paid; that the interest under each of the above types of oil payment contracts is a depletable interest; that the decisions dealing with the recoupment of cost and the allowance for depletion are contradictory and confusing, *Commissioner* v. *Laird*, 91 Fed. (2d) 498; *F. H. E. Oil Co., supra; Cook Drilling Co.*, 38 B. T. A. 291; *Edwards Drilling Co.*, 35 B. T. A. 341; *Willis R. Dearing*, 36 B. T. A. 843; affd., 102 Fed. (2d) 91; and *Rocky Mountain Development Co.*, 38 B. T. A. 1303, and that the Board in these proceedings should reconsider the questions presented and "eliminate" the confusion by holding that under the oil payment contracts here involved the petitioners are entitled both to recoupment of cost out of collections and thereafter to depletion.

The respondent has now filed a supplemental brief stating that subsequent to the filing of his original brief the Supreme Court has decided the case of *Anderson* v. *Helvering*, 310 U. S. 404, which in his opinion negatives the distinction made in *F. H. E. Oil Co., supra*, between an oil payment contract containing a formal assignment of an interest in oil to be produced until a specified amount is paid and one containing no such formal assignment but requiring the payment of a specified amount out of oil if, as, and when produced, and necessitates the conclusion that all such contracts, whether containing formal words of assignment or not, represent an economic interest in the oil in place. Taking that view of the Court's decision, the respondent concludes that oil payment contracts 2, 3, 4, 5, 7, and 8, as well as contracts 1, 6, 9, and 10, represent economic interests in the oil to be produced and that petitioners are entitled to an allowance for depletion with respect to the production under each of the contracts, but they must look to depletion for the recovery of their cost or other basis for each such contract and may not recoup cost out of the proceeds of production and report in gross income only the excess of such proceeds over cost, as petitioners contend they are entitled to do.

Accordingly we have a situation where both parties argue that the distinction drawn by the Board in *F. H. E. Oil Co., supra*, is without merit and that the owner of an oil payment contract is the owner of an economic interest in the oil to be produced where the agreement is to pay a specified sum out of the proceeds of oil, if, as, and when produced, regardless of whether the contract contains a formal as-

signment of such an interest. If the question of depletion were the only matter in issue, we might be justified in concluding our discussion at this point, since the respondent by the argument just stated concedes that the petitioners are entitled to a depletion allowance with respect to each of the ten oil payments, but, even so, we still have for determination the question as to the proper method of recovering the cost of the oil payment contracts, and as to that question we have no concession by either party. Furthermore as our decisions now stand, determination of the method by which the cost of oil payment contracts must be recovered turns on the distinction heretofore drawn between the two types of oil payments which the parties here argue is without merit. *F. H. E. Oil Co., supra; Cook Drilling Co., supra;* and *Willis R. Dearing, supra.* We must therefore either consider the question as to whether the oil payment contracts herein may properly be classified as evidencing ownership of economic interests in the oil in place, as the parties claim, or must ignore or overrule certain of our decisions merely because the parties here are in agreement that the distinction we have drawn between the two types of contracts is without merit. The latter we may not do.

With respect to contracts 1, 6, 9, and 10, the petitioners had been the owners of oil and gas leases represented by a seven-eighths working interest and had assigned such interests to others for stipulated considerations and in addition had retained the right to receive other specified amounts from a fractional part of the oil, if, as, and when produced. There was no personal obligation on the part of the assignees to make the further payments to petitioners, such further payments being wholly dependent upon the production of oil. We think it clear, under the doctrine of *Thomas* v. *Perkins, supra,* that the interests of petitioners in contracts 1, 6, 9, and 10 were interests in the oil in place and the parties are correct in so concluding.

With respect to contracts 2, 3, 4, 5, 7, and 8, the parties have proceeded on the assumption that, while they did represent obligations on the part of the assignors to pay specified amounts out of the proceeds of oil from certain wells, if, as, and when produced, there was no assignment or conveyance of the oil in place within the meaning of *F. H. E. Oil Co., supra,* and, if the distinction drawn in *F. H. E. Oil Co., supra,* is sound, it would follow from the application of that case that the petitioners would be entitled to recover cost out of the proceeds of production before being required to report any of the amounts collected as gross income. Contracts 3, 7, and 8 were acquired by petitioners in consideration for the drilling of oil wells for other parties, while contracts 2, 4, and 5 were acquired by purchase. Examination of contracts 2, 3, 4, 7, and 8 convinces us that even under the test laid down in *F. H. E. Oil Co., supra,* they did represent the assignment of economic interests in the oil to be pro-

duced. Contracts 2, 3, and 8 made provision for the reversion of the interests out of which the specified amounts were to be paid. In contract 7, E. M. Bramlette, receiver, was party of the first part and petitioner T. W. Lee was one of the parties of the second part. The contract provided that "after the payment of said consideration said interest out of which said payment is made shall be the property of and run in the name of the Receiver." In contract 4 it is recited that the parties from whom the petitioners acquired their interest were "the present owners and holders of all those said mineral rights, hereinafter described, to wit: the last seventeen thousand seven hundred dollars, ($17,700.00), out of twenty thousand dollars, ($20,-000.00), to be paid out of one fourth (¼) of seven eighths (⅞) of the first oil produced, saved and sold from" the described property. The contract then recited the sale to petitioner T. W. Lee of one-half of "the hereinbefore described oil payment and property rights, to have and to hold the same unto the said assignees named, their heirs and assigns, forever." There would have been no occasion for the insertion of the reversion clauses in contracts 2, 3, and 8 or the vesting clause upon completion of the payment under contract 7 if there had been no assignment of interest in the oil to be produced, and as to contract 4 we think there can be no doubt from the language quoted that an assignment of an interest in oil in place was intended and made. We accordingly conclude that under contracts 2, 3, 4, 7, and 8 the interests of petitioners were economic interests in the oil in place and not merely contractual or personal rights against the obligor.

With respect to contract 5, however, we are unable to conclude on the record before us that there was an assignment of an interest in the oil in place within the meaning of *F. H. E. Oil Co.*, *supra*, and it becomes necessary therefore to consider the present contention of the respondent that under the reasoning of the Supreme Court in *Anderson* v. *Helvering*, *supra*, an agreement to pay a specified amount out of oil, if, as, and when produced evidences an interest in oil in place and not a mere money obligation, regardless of the absence of formal words of assignment of such an interest.

In *Anderson* v. *Helvering*, *supra*, the owners of certain royalty interests, fee interests, and deferred oil payments in certain properties conveyed the said properties and interests to a second party for the agreed consideration of $160,000, payable $50,000 in cash and $110,-000 from one-half of the proceeds from the sales of oil and gas from such properties and from the sale of the land so conveyed until the said $110,000 had been paid with interest. It was further provided that the sellers, as security for the payment of the said amount of $110,000, should have a first lien against one-half of all oil and gas produced and against the fee interest. The question for decision was whether the income from the subsequent production of oil to the

extent of one-half was the income of the purchaser or that of the sellers. The issue as stated by the Court was as to who had a capital investment in the oil and gas in place and the extent of that interest. Pointing out that the reservation of the lien on the fee was in the nature of a guarantee that the payments should in all events equal the specified sum, regardless of the production of oil, the Court held that the sellers had not reserved an interest in the oil in place, as was true in *Thomas* v. *Perkins, supra,* and that the income from the production of oil was the income of the purchaser and not the income of the sellers. Distinguishing the two cases, the Court said:

*Thomas* v. *Perkins,* 301 U. S. 655 [*supra*], relied upon by petitioners, presented the issue whether the right to oil payments—that is, the right to a specified sum of money, payable out a specified percentage of the oil, or the proceeds received from the sale of such oil, if, as and when produced—should be treated for tax purposes like the right to oil royalties or like the right to cash payments upon a sale. In that case, the assignment of lease provided for payments in oil only without the reservation of a royalty interest. The question was whether the assignees' gross income should include moneys paid to the assignors by purchasers of the oil. We stated (p. 659): "The granting clause in the assignment would be sufficient, if standing alone, to transfer all the oil to the assignees. It does not specifically except or exclude any part of the oil. But it is qualified by other parts of the instrument. The provisions for payment to assignors in oil only, the absence of any obligation of the assignee to pay in oil or in money, and the failure of assignors to take any security by way of lien or otherwise unmistakably show that they intended to withhold from the operation of the grant one-fourth of the oil to be produced and saved up to an amount sufficient when sold to yield $395,000." Under these circumstances, the moneys received by the assignors from the sale of the oil were deemed not to be income to the assignees. See also *Palmer* v. *Bender,* 287 U. S. 551.

The holder of an oil payment right, as an original proposition, might be regarded as having no capital investment in the oil and gas in place. The value of the right, even though dependent upon the extent of the oil reserves, is fixed at the moment of creation and does not vary directly with the severance of the mineral from the soil. In this sense it resembles the right to cash payments more closely than the right to royalty payments. Yet it does depend upon the production of oil, ordinarily can be realized upon only over a period of years, and permits of a simple and convenient allocation between lessor and lessee of both the gross income derived from production and the allowance for depletion. Compare *Burnet* v. *Harmel,* 287 U. S. 103, 106–107. Accordingly, this Court in *Thomas* v. *Perkins* decided that the provision in the lease for payments solely out of oil production should be regarded as a reservation from the granting clause of an amount of oil sufficient to make the agreed payments and should be given the same tax consequences as a provision for oil royalties. The decision did not turn upon the particular instrument involved, or upon the formalities of the conveyancer's art, but rested upon the practical consequences of the provision for payments of that type. See *Palmer* v. *Bender,* 287 U. S. 551, 555–557; *Burnet* v. *Harmel,* 287 U. S. 103, 111.

\*　　\*　　\*　　\*　　\*　　\*　　\*

\* \* \* The economic consequences of the transaction are not materially affected by the circumstance that the provision for oil payments is not phrased

in terms of a reservation from the conveyance to Oklahoma Company of an interest in the oil and gas in place. And the fact that the payments to Oklahoma Company are in cash rather than directly in oil is of no moment in determining the issues presented for decision. * * *

It seems clear from this language that the Supreme Court regards any oil payment right (a right to a specified sum of money payable only out of a specified percentage of oil or the proceeds received from the sale of such oil, if, and when produced) as an economic interest in oil in place, the holder thereof being the owner of the share of gross income from production represented by the payments to him and being entitled to the attending depletion allowance. Under the Court's explanation of the *Perkins* decision, it would seem that the proceeds received on an oil payment contract should be treated the same as proceeds received on oil royalties, provided, of course, the contract did not by reason of additional security guaranteeing payment of the sum specified represent merely a money obligation. The Court said that the decision in *Thomas* v. *Perkins, supra,* "did not turn upon the particular instrument involved, or upon the formalities of the conveyancer's art, but rested upon the practical consequences of the provision for payments of that type." It then referred to the "economic consequences" of the transaction and said that they were not materially affected by the circumstance that the provision for oil payments was not "phrased in terms of a reservation from the conveyance" of an interest in the oil and gas in place. Furthermore, there is nothing whatever in the language of the Court to indicate that any importance should be attached to the manner of acquisition. The Court was obviously more interested in the "practical consequences" of the contract or the "economic consequences" of the transaction, and we do not think it would make any difference whether the holder of the oil payment right reserved it when assigning a lease, acquired it by purchase, or received it as payment for drilling and equipping a well. As a practical matter the "economic consequences" of the transaction, or the holder's rights as provided for in the contract, should be the determining factors. In that connection, see also the pronouncements by the Supreme Court in *Palmer* v. *Bender*, 287 U. S. 551.

In the instant case the receipt of the amounts prescribed, or any part thereof, was wholly dependent upon the existence of oil reserves and production therefrom. The specified amounts were payable solely out of oil production and any personal or contractual obligation to make such payments was wholly contingent and no different from that of parties required to make payments in respect of reserved oil royalties. The "practical consequences" of the provisions for oil payments were exactly the same in each and every one of the ten oil payment contracts here under consideration, and in

the light of what the Supreme Court has said in *Anderson* v. *Helvering*, it is our conclusion that the interests of the petitioners therein were economic interests in the oil in place and the respondent, having correctly assumed that the petitioners' interests were interests in the oil in place, has properly conceded that they are entitled to an allowance for depletion with respect to the production therefrom. *Palmer* v. *Bender, supra.* To the extent that *Cook Drilling Co., supra, F. H. E. Oil Co., supra,* and other cases applying the rule pronounced in those cases are contrary to the conclusion just reached they will no longer be followed. For cases in which the interests involved were not interests in the oil in place, see *Helvering* v. *Bankline Oil Co.,* 303 U. S. 362; *Helvering* v. *O'Donnell,* 303 U. S. 370; and *Helvering* v. *Elbe Oil Land Development Co.,* 303 U. S. 372.

Having concluded that the interest of the petitioners under each of the oil payment contracts was an interest in the oil in place, we also conclude that they must look to depletion for the recovery of their cost and may not recoup cost out of production before being required to report any of the proceeds as gross income. *Palmer* v. *Bender, supra; Willis R. Dearing, supra; F. H. E. Oil Co., supra;* and *Vinton Petroleum Co.* v. *Commissioner,* 71 Fed. (2d) 420. See also *Columbia Oil & Gas Co.,* 41 B. T. A. 38; *Charles Pettit,* 41 B. T. A. 264; and *Heep Oil Corporation* v. *United States* (Court of Claims), 32 Fed. Supp. 762. The petitioners have referred us to no provision in the statute which in the absence of sale or failure of production supports any right to recoup the cost of an interest in oil in place other than through depletion, and we do not have here any question involving the application of the regulation which on election permits the deduction of intangible drilling costs as expenses. The most we are able to make of petitioners' argument is that the denial of such recoupment of cost out of the proceeds of production is contrary to the holding in *Commissioner* v. *Laird, supra,* and an unpublished opinion of the Board. Even if we assume that the decisions mentioned stand for the proposition for which petitioners contend, we can not overlook the fact that the question has since been considered in numerous cases and a conclusion contrary to that which the petitioners seek has been reached. One such case, *Willis R. Dearing, supra,* was affirmed by the same court that previously had decided *Commissioner* v. *Laird,* and it took no notice of the *Laird* decision. Furthermore, the logic of the situation offers no basis for the allowance of petitioners' claim. The allowance of depletion, as the court in the *Dearing* case pointed out, is to permit the recovery of cost or capital investment where the interest in the oil in place is not sold or exchanged but is exhausted or depleted through production, and to allow the recoupment of cost out of the proceeds of oil produced as well as depletion would to the extent allowed be

comparable to the allowance of a double deduction, which, in the absence of plain and clear language to that effect by Congress, may not be done.

The petitioners also claim that certain of the oil payment contracts dealt with in *Rocky Mountain Development Co.*, *supra*, and *Edwards Drilling Co.*, *supra*, represented interests in the oil in place even under the test of *F. H. E. Oil Co.*, *supra*, and that recoupment of cost without respect to depletion was permitted in both cases. Even if petitioners are correct in their interpretation of the facts in those cases, namely, that certain of the contracts did contain formal assignments of interests in oil in place, that fact can be of little comfort to them here. It would merely indicate that the Board incorrectly concluded that the petitioners did not have an interest or capital investment in the oil in place and not that, having such an interest, they are entitled to recoup cost out of production before being required to report any of the proceeds in gross income.

From the above, we hold that the interests under the contracts herein are interests in the oil in place, and that, being so, the petitioners are properly required to look to depletion for the recovery of their cost of such interests, and may not recoup cost out of production before being required to report any part of the proceeds in gross income.

One other issue, relating to the treatment of intangible drilling and development costs for the purpose of applying the limitation on percentage depletion, was abandoned at the hearing.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

DISNEY, dissenting: I agree with the majority opinion that the assignments as to wells Nos. 1, 6, 9, and 10 convey such economic interest as to cause application of depletion principles. Those instances are obviously covered by *Thomas* v. *Perkins*, 301 U. S. 655, because in that case the owner of a depletable interest retained, in his assignment, a portion thereof. I am impelled, however, to dissent, in so far as concerns the remainder of the "oil payments" involved. They are not all of precisely the same character. Contracts Nos. 3, 7, and 8 were received in consideration of drilling done, while contracts Nos. 2, 4, and 5 were purchased. The majority opinion is in error, it seems to me, in concluding that there was any conveyance of more than a right to receive money in contracts Nos. 2, 3, 4, 5, 7, and 8. Contract No. 2 plainly assigns "the sum of Twenty Seven Hundred ($2700.00) Dollars"; contract No. 3 assigns "the sum of Thirty Five Thousand ($35000.00) Dollars"; contract No. 4, after reciting that the transferor is the owner of "the last seventeen thousand seven hundred dollars, ($17,700.00), out of twenty thousand dollars, ($20,000.00)", assigns

"all of the herein above described property"; contract No. 7 provides that the transferee shall receive for drilling, etc., "the sum of Thirty Two Thousand Five Hundred ($32,500.00) Dollars"; and contract No. 8 provides that the transferee shall receive for drilling, etc., "the sum of THIRTY FIVE THOUSAND ($35000.00) DOLLARS." Each of the above contracts, of course, provides in addition that the money shall be paid out of oil produced "*until*" the sum named is received, with the exceptions of Nos. 4 and 7, which merely convey the right to receive the money out of a specified interest in the first oil produced. In the case of contract No. 5, the majority opinion is unable to find an assignment of an interest in the oil in place. There the assignment is merely of an undivided one-third interest in an oil payment to be paid out of a certain interest in the first oil produced.

I am unable to find in any of these instances a conveyance of the oil in place or connected with a transfer of any interest in the lease or fee. I therefore do not believe that a depletable interest was conveyed. Reliance is placed by the majority opinion upon *Palmer* v. *Bender*, 287 U. S. 551; *Thomas* v. *Perkins*, *supra*, which cites *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312; and *Anderson* v. *Helvering*, 310 U. S. 404. In each of those cases there was considered the question of an assignment, or reservation, of mineral rights by one who owned an undoubtedly depletable interest. In *Palmer* v. *Bender*, the transferor owned oil and gas leases. In *Thomas* v. *Perkins*, the same is true. In *Helvering* v. *Twin Bell Oil Syndicate*, the taxpayer was the assignee of a lease and obligated to pay royalties of one-fourth of the oil. The Court held that its depletable interest did not include the royalties. In *Anderson* v. *Helvering*, the transferor owned royalty interests, fee interests, and deferred oil payments, all of which it conveyed "without reservation" and under a contract "to sell all of its right, title and interest of whatsoever nature", the transferee to pay partly in cash and partly from proceeds from oil and gas produced from the properties and from the sale of fee title to land conveyed. It was there held that no depletable interest was retained by the transferor. The decision is placed upon the ground that in addition to a reservation of rights against oil or gas to be produced, there was a reservation of an interest in or a lien upon the fee.

It thus appears that none of the above authorities involved a situation analogous to that involved herein in contracts Nos. 2, 3, 4, 5, 7, and 8. Except for the *Anderson* case, the above authorities are, in fact, a pronouncement of the same idea—that the transferor, owner of the depletable interest, did not intend to convey, and was therefore held not to convey, such depletable interest, to a certain degree. The matter turns on the original ownership of the depletable interest and intent of the parties as to conveying same, the contract in each case being ex-

amined for such intent. Where one owns a depletable interest in oil and gas in connection with ownership of a fee or lease, it is easy logic to deduce that in a conveyance providing that he should be paid out of such oil and gas, he to that extent did not intend to convey and did not convey such oil and gas. But it seems to me that such cases offer no analogy or authority in situations such as here presented, where the assignee receives a right which is plainly and primarily that of collecting money. In terms, in most of the instances here involved and applied, his connection with the oil and gas under the land is to last only until he is paid. His right would clearly, I think, in case of a contest between the holders of different interests, such as lien holders, secured creditors, etc., in a bankruptcy proceeding, be held to be only by way of security for the payment of his money and not to possess the dignity of any greater interest. A lien or mortgage does not, I take it, confer a depletable economic interest upon the holder thereof. In such cases and in the cases here involved the extraction of oil does not, in fact, affect the right of the holder of the "oil payment" proportionately with the extraction. The holder of a $10,000 "oil payment", for example, has a right to recover the entire amount thereof and that right remains even though, for example, a million barrels of oil has been taken from the ground. The owner of the fee or lease has had his rights depleted by such million barrels of oil, yet the owner of the $10,000 oil payment, if for any reason he has failed to secure payment, still has the right to receive the entire $10,000—so long as the well produces. In other words, his rights are cut off, not by extraction or "depletion", but by the end of production from the well or tract of land. Obviously, the actual decrease in production does not affect him in the same manner or to the same extent that it does the owner of the fee or lease. I think, therefore, that he should not be placed in the same position as the owner of such fee or lease, and that as to him a fair and simple workable rule is to allow the collection of the money, which is his right, without taxation, until he has recovered his base.

The majority opinion stresses the language in the *Anderson* case, and in *Palmer* v. *Bender*, to the effect that too much weight should not be attached to the words of conveyance. I do not think it follows from this language in interpreting a reservation in an assignment made by the holder of a depletable interest that an assignee, such as those herein involved, should be held to have received a depletable interest without some actual conveyance of an interest in the oil itself which will actually be diminished or depleted by extraction of oil, in the same manner as that of the holder of the fee or lease. Depletion is intended to prevent taxation of capital. Indeed the *Anderson* case is ample authority that the form of conveyance must have attention

and may serve to affirm or deny the passage of a depletable interest, for the Court assigns, as its particular reason for holding that a depletable interest passed, the fact that in addition to language which might not have passed a depletable interest under *Thomas* v. *Perkins*, *supra*, the instruments also provided for a lien upon and right to payment from proceeds of the fee estate. It thus appears that, in the consideration of this question of the passage of a depletable interest, the intent of the parties is to be gathered from the language used, and all of it. When this is done, I find no facts in the above citations from the Supreme Court of the United States parallel to the situation here presented sufficient to indicate that the holder of a right to receive, not oil subject to uncertainty of production, but a certain amount of money, but with payment limited from oil or gas produced, suffers the same actual depletion as does the holder of a fee or lease, or to indicate that in such cases depletion offers a simpler or more workable rule than the application of the money payments received against the base.