F. F. HARDESTY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. F. F. (EULA P.) HARDESTY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF R. A. ELLIOTT, DECEASED, EMMA C. ELLIOTT, AND CECIL H. TOLBERT, INDEPENDENT EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. E. CADDIE (R. A.) ELLIOTT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 94925, 94926, 94928, 94929. Promulgated January 7, 1941.

*Harry C. Weeks, Esq.*, and *R. B. Cannon, Esq.*, for petitioners.
*S. B. Anderson, Esq.*, for the respondent.

**OPINION.**

ARUNDELL: The issues in this proceeding have been enumerated at the outset and will be considered in the order there set forth.

*Issue No. 1.*

We are called on here to say whether the petitioners, F. F. Hardesty and his wife, may apply the whole of the proceeds received by them during the taxable year 1935 under the Haddaway oil payment to the cost of that payment as claimed by them, or may thus apply only the portion representative of cost and report the residue as taxable income as claimed by the respondent. The petitioners concede on brief that the issue here is substantially the same as that presented in *T. W. Lee*, 42 B. T. A. 1217. In that case, contrary to the contentions of both parties in the instant case, we held that the basis of oil payments

which represented an economic interest in the oil properties to which they applied, as evidenced either plainly by an assignment to the payee of the oil interest out of which the payments were to be made or more remotely by other factors, must be recovered through depletion. Accordingly, we held that proceeds received under such oil payments must be included in taxable income, with appropriate deductions for depletion.

The disposition of the present case is governed by that holding. In the situation before us there was an assignment of the interest from which the payments were to be made and accordingly no close question arises as in *T. W. Lee, supra*. It is clear that petitioners had an economic interest in the oil properties in question and they must therefore recoup their cost of the oil payment through depletion.

Accordingly, petitioners must include in income the entire amount of the proceeds received during the taxable year under the oil payments and are not entitled to the allowance for the return of cost made by the respondent. They are, however, entitled to appropriate deductions for depletion. ·

### Issue No. 2.

The question for decision under this issue is whether any of the intangible development and drilling costs incurred by the Hardesty-Elliott Oil Co., a partnership, in drilling the four wells, as described above, on the Richter "A" and "B" leases may be deducted as a business expense from the income of the partnership in computing the income distributable and taxable to petitioners.

Petitioners raise a preliminary question, contending that the issue as it relates to the Richter "A" lease is not properly before us, since it was not raised in the original pleadings or amendments thereto, but is an affirmative issue raised by the respondent for the first time on supplemental brief. The situation as to this is somewhat unusual. The petitioners by amended petition squarely raised the issue in allegations that "respondent erred in failing and refusing to allow as a deduction * * * the said intangible drilling and development costs totaling $10,727.34 and $7,768.75 respectively." These allegations were denied by the respondent's answer to the amendment. Consequently, the petitioners err in their statement that the issue was not raised by the pleadings. In the petitioners' first brief filed in these proceedings they say that "the issue presented by the amended petitions with respect to drilling costs on the Richter 'A' lease is hereby waived." Therein they recognize that they raised the issue which they now say was never raised by the pleadings. As the petitioners have waived the issue, perhaps it would be sufficient to say that the issue should be decided for the respondent on the waiver. But the respondent asks for decision on the merits, and the petitioners have

filed a reply brief arguing the question at length, apparently not desiring to have it decided on their waiver. In this posture of affairs we think the question properly before us for decision on the merits and we prefer to so dispose of it.

As the cases now stand as to this issue, the respondent has not allowed deductions for the cost of drilling wells on the Richter "A" and "B" leases for the reason that they constitute, in his view, the capital cost of the interests in the leases which were acquired thereby and must, therefore, be capitalized. The principal argument of the petitioners in reply is that the drilling and development of the leases in question did not constitute "consideration" for the interests acquired by the Hardesty-Elliott Oil Co. in the leases and that as ordinary intangible development and drilling expenses they are deductible on the authority of article 23 (m)–16 of Regulations 94.

We have previously passed on the general question which is thus framed. It arises here, as in several former instances, where the taxpayer in the execution or assignment of an oil lease or a deed to oil property agrees to drill a certain number of wells on the leased or acquired premises. We have held in this situation that, where it is clear that the drilling constitutes consideration for an interest in the land or lease, the drilling and development costs so incurred must be capitalized. See *State Consolidated Oil Co.*, 19 B. T. A. 86; affd., 66 Fed. (2d) 648; certiorari denied, 290 U. S. 704; *Nunn-Stubblefield Oil Co.*, 31 B. T. A. 180. The Circuit Court of Appeals in affirming the former case noted the argument of the taxpayer that authority to deduct such drilling costs as business expense was found in article 223 of Regulations 62, which corresponds to article 23 (m)–16 of Regulations 94, relied on by petitioners here. The court in answering that argument held that this provision of the regulations applied only to expenses incurred on land which the taxpayer owned or had theretofore leased and was "not intended to apply to one who drills a well upon land in performance of a contract to purchase an interest therein."

The issue presented thus resolves itself into the question of whether, in the circumstances of each of the two leases and agreements before us, the development and drilling which the Hardesty-Elliott Oil Co. was obligated to perform may properly be regarded as the consideration for the interests acquired in the leases. This requires a separate consideration of each lease and its pertinent agreement.

The terms of the instrument of assignment by which the Hardesty-Elliott Oil Co. acquired a three-quarters interest in the Richter "A" lease expressly provide that the assignee shall drill two wells on the leased premises, under certain conditions, "as part of the consideration for this assignment and the rights hereby granted." It must, therefore, be assumed that the parties to the agreement regarded the

outlays to be made by the Hardesty-Elliott Oil Co. in drilling as the *quid pro quo* for the assigned interest in the lease. This is a factor of prime significance in making the determination which we are called on to make and, unless contradicted by the circumstances surrounding the agreement, may be accepted as conclusive. See *United States* v. *Sentinel Oil Co.*, 109 Fed. (2d) 854, where it was agreed by the parties that the drilling was the consideration for the lease involved. Such contradiction is not to be found in the fact that the assignment was completed before the drilling was begun. While this factor has been thought to be of significance by the Commissioner as set forth in G. C. M. 10686, C. B. XI–2, p. 257, his views have now been altered as shown by G. C. M. 22224 (July 23, 1940). The petitioners concede on brief that no argument in their favor may be founded on the time of the assignment of the lease. From an interpretation of the whole instrument it seems plain that the drilling operations were directly attributable to the requirements of the assignment and constituted a part of the consideration therefor. In this situation, and in view of the fact that no other circumstance attendant on the execution of the assignment which might alter this conclusion have come to our notice, it must be held on the authority of *Nunn-Stubblefield Oil Co., supra, State Consolidated Oil Co., supra,* and *United States* v. *Sentinel Oil Co., supra,* that the costs of drilling and developing the Richter "A" lease must be capitalized. Compare *Edwards Drilling Co.*, 35 B. T. A. 341; affd., 95 Fed. (2d) 719; *Cook Drilling Co.*, 38 B. T. A. 291; and *F. H. E. Oil Co.*, 41 B. T. A. 130, 134, cases in which the deduction of drilling costs as business expense is allowed since it is held that the interest acquired did not constitute an interest in the land.

Petitioners urge, however, that *Nunn-Stubblefield Oil Co., supra,* is distinguishable from the instant case in that there the transaction involved an exchange of the drilling operations for the lease, the transferor of the lease retaining merely an overriding royalty interest and in no way participating in the operation of the lease. In the present case, on the other hand, it is contended that the arrangement contemplated constituted a joint venture in which the drilling operations were contributed by petitioners as their share in the venture. Therefore, it is said, the petitioners became the owners of a three-quarters interest in the venture by virtue of the agreement, and the drilling which took place thereafter was thus done on a lease owned at least in part by the petitioners. In this guise, it is contended, the situation falls within the situation contemplated by article 23 (m)–16 and petitioners are thus entitled to deduct the three-fourths of the expense in proportion to their ownership.

We do not regard this interpretation of the assignment agreement as the true one. The object of the assignor in entering into the contract, as is made plain by the provisions placing in the assignee's

hands the whole management of the lease and the disposition of the oil and gas, was to secure the development of the lease by another, retaining to himself a share in the profits, if any, resulting from the oil and gas produced. The whole cost of the development was to be borne by the assignee, without risk of the loss of any money to the assignor. It is true the assignor agreed to pay a portion of the operating expenses after the wells were drilled and had begun to produce, but this by provision of the agreement was to be subtracted from the gross proceeds of the oil to which the assignor was entitled. The situation differs therefore only slightly from the royalty arrangement agreed on in *Nunn-Stubblefield Oil Co.*, *supra*, and for our purposes here that difference is without significance. The principal fact remains that the assignee received an interest in the lease in consideration of his agreement to drill on the leased premises; this requires capitalization of the drilling expense without regard to the fact that thereafter the proceeds of the oil were to be divided and the expenses borne by both parties to the agreement.

The question raised by the provisions of the Richter "B" lease and the accompanying "Development Contract and Escrow Agreement" presents a somewhat closer issue. The provisions of the agreement are plain enough as to the drilling of the first well on the Richter "B" lease. It is expressly stated to be "in consideration of the covenants and agreements set out in said oil and gas lease." This conclusion, moreover, is bolstered by the escrow provisions which expressly render the delivery of the lease dependent on petitioners' meeting this requirement. As to the second well, however, the result is less plain. It was to be drilled after the delivery of the lease and the failure to drill it was to result only in the forfeiture of the $10,000 bond as liquidated damages. These factors, however, we deem insufficient to make any distinction between the first and second wells. *United States* v. *Sentinel Oil Co.*, *supra*. In that case it was held that the time of the transfer to the taxpayer-driller of the interest which was to be transferred in connection with the drilling was not determinative of whether the drilling constituted consideration for the transfer. The significance of the liquidated damages provision in its application to the second well is paled by the fact that it applies equally to the performance of all other provisions of the agreement, including the drilling of the first well.

A significant feature of the agreement relative to the Richter "B" lease which in our opinion compels the conclusion that the drilling of both wells constituted consideration for the lease is the form in which the agreement was executed, separate and apart from the lease itself and in lieu of the payment of any consideration in cash at the time of executing the lease. This factor also answers petitioners' argument

that in the more usual oil and gas lease the prime or only consideration is the royalties agreed to be paid. In this case we have more than a simple oil lease; there is a separate agreement under which petitioners assume obligations for the discharge of which they are to receive full and free title to the lease. The costs thus incurred by them are plainly consideration for the lease and must be capitalized.

*Decision will be entered under Rule 50.*