NORTH RANGE MINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102435. Promulgated February 11, 1942.

*J. Marvin Haynes, Esq.*, and *John McCullough, Esq.*, for the petitioner.

*DeWitt M. Evans, Esq.*, for the respondent.

### OPINION.

SMITH: This proceeding involves deficiencies in income and excess profits tax for the years 1934 to 1937, inclusive, as follows:

| Year | Deficiency | |
|---|---|---|
| | Income tax | Excess-profits tax |
| 1934 | $4, 025. 89 | $164. 32 |
| 1935 | 4, 968. 56 | 1, 806. 74 |
| 1936 | 10, 300. 44 | 1, 267. 70 |
| 1937 | 6, 586. 08 | 1, 964. 78 |

The sole issue for our determination is whether petitioner is entitled to depletion deductions, on a percentage basis, on the production of iron ore under an agreement with the Ford Motor Co. whereby a portion of the ore mined was sold to Ford Motor Co. and a portion to third parties.

The parties have filed a written stipulation of facts, with numerous exhibits attached, which we adopt as our findings of fact herein.

Petitioner is a corporation, with its principal office at 3600 Book Building, Detroit, Michigan. It filed its income tax returns for the years involved with the collector of internal revenue for the district of Michigan.

On November 1, 1933, the petitioner entered into a written agreement with the Ford Motor Co., hereinafter sometimes referred to as Ford, under which it acquired the right to operate, for a period of five years, certain mining properties known as the Blueberry mine,

located in Marquette County, Michigan. Ford was the sublessee of the properties under a lease dated July 14, 1926, from the Palms-Book Land Co., which in turn was lessee of the fee owners under a lease dated August 4, 1925. The original lease to the Palms-Book Land Co. was for a term of 50 years from August 4, 1925. The lease to Ford was for a term of 48 years. Under that lease Ford, lessee, agreed to enter upon the premises and to do everything necessary to conduct mining operations. It agreed to pay a ground rental of $10,000 for the first year, $20,000 for the second year, $30,000 for the third year, $40,000 for the fourth year, and $60,000 for the fifth year and each succeeding year thereafter for the term of the lease. It agreed also to pay royalties of 50 cents per ton on the ore mined, which royalties were to be applied to the ground rent each year. The lease was later amended as to the amount of rents and royalties to be paid by the lessee. The lessee agreed to mine and remove as much ore yearly as would be required for its own use, provided such ore could be mined profitably.

The contract of November 1, 1933, between Ford and the petitioner provided in part as follows:

1. From November 1, 1933, and for a period of five (5) years thereafter, Operator [petitioner] agrees to mine and load for shipment from the Blueberry Mine ore of the grade specified by Ford to meet Ford's requirements, during the period of this lease. Ford agrees to pay for ore so mined and loaded F. O. B. cars at the Blueberry Mine, $1.25 per gross ton. This price is based on the prevailing labor scale of July 1, 1933 used by the Oliver Iron Mining Company on the Marquette Range as shown on Exhibit "A" attached hereto and made a part hereof. It is understood and agreed that this basic price of $1.25 per gross ton shall be increased or decreased to the extent of sixty per cent (60%) of the percentage of the increase or decrease of the said Oliver scale. Such change in price shall be made in the month succeeding the change in the said Oliver wage scale.

2. The quantity of ore to be mined for Ford shall be specified by Ford in writing semi-annually and such specification may not be changed without the consent of Operator. Specifications shall be made as of January 1st and July 1st of each year.

3. The grades of ore to be mined during any calendar year for Ford shall be specified by Ford on January 1st of each year, and shall be subject to the following conditions:

    *        *        *        *        *        *        *

4. Operator shall in each semi-annual period have the right to mine and sell on the open market such additional ore as the property can produce over and above the Ford requirements as specified in the manner hereinbefore provided.

For all excess ore so sold and shipped to other parties by Operator in the calendar year 1933, said Operator shall pay said Ford a royalty of 75¢ per gross ton; and in each calendar year after 1933 said Operator shall pay said Ford a royalty of 75¢ per gross ton for the first 50,000 tons so sold and shipped in such calendar year, and a royalty of $1.00 per gross ton for all such additional ore so sold and shipped to said other parties in such calendar year in excess

of 50,000 tons. All such payments shall be made quarterly on the 15th day of January, April, July and October, for the ore so shipped during the preceding quarterly period.

5. Operator shall on January 15, 1934, pay said Ford an advance royalty of $6,666.67, and on April 15, 1934 an advance royalty of $10,000.00, and thereafter during the continuance of this agreement Operator shall make advance royalty payments of $15,000.00 quarterly, payable on the 15th day of July, October, January and April; provided, however, the advance royalties shall not exceed the ground rental payments which Ford is required to pay under said Ford-Palms Book lease, as amended.

6. Operator shall receive a credit of 50¢ per gross ton on advance royalty so paid by it on ore sold and shipped from the property to others than Ford; if such credit in any calendar year is not sufficient to liquidate the advance royalties so paid during such calendar year, then Operator shall receive a credit of or be paid 50¢ per gross ton on ore mined and shipped to Ford until said advance royalties have been liquidated. If shipments of ore in any year are not sufficient to liquidate advance royalty payments in that year, any balance remaining unliquidated shall be carried forward until such time as shipments are sufficient to liquidate such balances; provided, however, that any advance royalty payments remaining unliquidated at time of final termination of this agreement as provided in Paragraph Thirteen hereof shall be absorbed by Operator.

It was further provided that Ford would turn over the Blueberry mine property to the petitioner fully equipped for operation and that upon termination of the agreement the buildings and equipment on the property would be turned back to Ford in as good condition as when received, less ordinary wear, tear, and obsolescence; that petitioner would pay all taxes and assessments on the lands and the ore mined therefrom during the continuance of the agreement; that petitioner would assume all risk of damage or injury to property of others or persons upon or about the premises, and would keep all of the property insured against fire, for the benefit of Ford; that petitioner would operate the property in a good, workmanlike manner and in accordance with the terms of the Ford lease with the Palms-Book Land Co.; that the agreement might be canceled by either party upon six months' notice; and that upon cancellation or termination any ore then mined by the petitioner and still in the stock pile would be the property of the petitioner, subject to removal at any time within 1½ years, or, at the option of Ford, it might be acquired by Ford at the price agreed upon in the contract. It was further provided that petitioner would furnish Ford with quarterly statements showing the amount of ore shipped and the parties to whom shipped and also monthly statements and maps of the drilling done on the property.

There was a further provision that the agreement could not be assigned by the petitioner without the written consent of Ford.

On April 25, 1934, Ford agreed to purchase 100,000 tons of

"Hocking" ore from mines in the Mesabi and Cuyuna ranges from the petitioner and to deliver to the petitioner in consideration therefor tonnage of Blueberry ore containing equivalent natural iron units. Ford also agreed to purchase said tonnage of Blueberry ore from the petitioner. On April 30, 1934, the Inland Steel Co. agreed to deliver to petitioner 100,000 tons of "Hocking" ore and petitioner agreed to deliver to the Inland Steel Co. tonnage of Blueberry ore. Petitioner subleased part of the surface land to the Inland Steel Co. for stock pile purposes.

Petitioner entered into contracts involving Blueberry and Orwell ores, similar to that referred to above, with the same parties under date of April 29, 1936.

Petitioner entered into so-called term ore contracts, involving the sale and delivery of Blueberry ore over a period of years to a company other than Ford, during the calendar years 1934 to 1937.

On June 15, 1937, the Barnes Land Co., Palms-Book Land Co., Ford, and the petitioner joined in a conveyance to the board of county road commissioners of Marquette County, Michigan, of an easement for the construction and maintenance of a county road over the surface lands of the Blueberry mine.

During the years 1934 to 1937, inclusive, Ford requested suppliers of iron ore to make bids for its anticipated requirements. Petitioner was required to meet this competition and in doing so sold some ore to Ford at a price below that fixed in the contract of November 1, 1933.

The following tabulation shows the amounts in tons and gross sales of ore mined and sold by petitioner from the Blueberry mine:

| Year | Ore sold to Ford | | Ore sold to others | |
|------|------|------|------|------|
| | Tons | Amount | Tons | Amount |
| 1934 | 137, 158 | $190, 408. 13 | 10, 505 | $46, 297. 92 |
| 1935 | 323, 431 | 454, 133. 40 | 30, 288 | 104, 643. 93 |
| 1936 | 348, 949 | 493, 016. 87 | 52, 599 | 201, 634. 29 |
| 1937 | 278, 572 | 480, 170. 94 | 76, 645 | 300, 478. 15 |

In its returns for 1934 to 1937, inclusive, petitioner elected to take depletion deductions on a percentage basis and claimed such deductions on all of the ore sold during the taxable years. The respondent in determining the deficiencies herein has allowed depletion deductions on the ore mined by the petitioner under the agreement of November 1, 1933, and sold to third parties, but has ruled that the petitioner did not acquire any economic interest in the ore mined and shipped to Ford, and therefore is not entitled to the deductions claimed in respect of such ore. The amount of the depletion deduc-

tions claimed by the petitioner in each year and the amounts allowed by the respondent are shown as follows:

| Year | Amount claimed | Amount allowed |
|---|---|---|
| 1934 | $32, 376. 18 | $3, 246. 44 |
| 1935 | 43, 359. 62 | 6, 520. 57 |
| 1936 | 44, 226. 73 | |
| 1937 | 32, 978. 40 | |

The parties submit that the question in issue hinges upon the construction of the agreement of November 1, 1933, and particularly that portion of the agreement relating to the iron ore to be mined and sold to Ford. The respondent contends that under the contract in question petitioner's relationship to Ford, at least as to the ore to be sold to Ford, was that of an independent contractor and not a lessee, and that petitioner operated the mine merely as an agent of Ford, with the right to dispose of any excess ore over Ford's needs on its own behalf. The parties devote a considerable portion of their briefs to a discussion of whether petitioner, under the agreement of November 1, 1933, was a lessee, or a mere assignee, or an independent contractor.

As to the construction of the agreement, it is not material to our purpose whether it is a sublease or some other form of contract. Whatever the form technically, if it conveyed to the petitioner an interest in the ore in place, depletion deductions on such ore are allowable to the petitioner. *Burnet* v. *Harmel*, 287 U. S. 103; *Palmer* v. *Bender*, 287 U. S. 551; *Willis R. Dearing*, 36 B. T. A. 843; *T. W. Lee*, 42 B. T. A. 1217. With respect to the application of the decision of the Supreme Court in *Palmer* v. *Bender*, *supra*, G. C. M. 11822, Cumulative Bulletin XII-1, p. 229, provides in part as follows:

Accordingly, the right to a depletion allowance does not depend upon the nature or character of the legal estate retained or acquired by the parties to an original oil and gas lease or their successors, but depends entirely upon whether any of such parties is entitled to share in the oil and gas produced from the properties. If any of such parties is entitled to a share of the oil and gas, he has the "economic interest" upon which the Supreme Court bases the right to a depletion allowance. In view of the foregoing, General Counsel's Memorandum 8650 is revoked.

See also *T. W. Lee*, *supra*, and *Rowan Drilling Co.*, 44 B. T. A. 189.

Petitioner was obligated under the agreement in question to produce annually as much ore as needed to meet the requirements of Ford, for which Ford was to pay it $1.25 per ton, with adjustments if necessary to conform to the so-called "Oliver scale." It was obligated to pay advance royalties to Ford not in excess of ground rental which Ford was obligated to pay to its lessor. Petitioner

had the right in any year to mine and sell to others as much additional ore as it might choose, for which it was to pay royalties to Ford of 75 cents per ton for the ore sold in 1933 and for the first 50,000 tons sold in any subsequent year, and $1 per ton for any additional amount. Petitioner was to receive a credit on advance royalties to be paid to Ford of 50 cents per ton on the ore sold to third parties and a further credit on any unliquidated portion of such advance royalties of 50 cents per ton on ore sold to others. Any advance royalties not completely liquidated in any year were to be carried forward until there were sufficient ore shipments to liquidate them.

It is apparent from these provisions of the agreement that Ford retained no interest in the ore in place except the royalties which it was to receive from petitioner on ore mined and sold to others. Whatever additional benefit it was to receive from the purchase of the ore mined for its own needs at a price below market was a contractual right and not an economic interest in the ore in place. The question of apportionment of the interests of lessor and lessee in oil in place was considered by the Supreme Court in *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312. It was held in that case that the depletion deductions (on a percentage basis) of the lessee should be, computed on the gross production less the one-fourth royalties paid to the lessor on which depletion was allowable to the lessor. The Court said that: "Such an apportionment has regard to the economic interest of each of the parties entitled to participate in the depletion allowance", and a different rule does not apply where the lessee sells all the oil and pays the royalties in cash. See also *Thomas* v. *Perkins*, 301 U. S. 655. Under the decision of the Court in *Helvering* v. *Twin Bell Oil Syndicate*, *supra*, petitioner is clearly entitled to percentage depletion deductions on the gross receipts from the ore sold to third parties after deduction of the royalties paid to Ford, and the respondent has allowed such deductions, subject to the statutory limitation of 50 percent of the net income from the property without allowance for depletion. We see no justification for treating the agreement of November 1, 1933, as divisible and as requiring the ore sold to Ford to be treated in a different manner for depletion purposes from that sold to others. While this ore was sold to Ford at a price under market, the practical result, as petitioner suggests in its brief, was the same as if the ore had been sold to Ford at market and petitioner had paid royalties to Ford approximating the difference between the market price and the contract price. In that case Ford would have been entitled to depletion deductions on the royalty interest which it retained and petitioner would have been entitled to

depletion deductions on the amounts received from Ford.  *Helvering*
v. *Twin Bell Oil Syndicate, supra.*  In any event we think petitioner
is entitled to depletion deductions on the proceeds of all of the ore
sold during the taxable year, including the sales to the Ford
Motor Co.

*Decision will be entered under Rule 50.*