Osceola Heard Davenport v. Commissioner.
Osceola Heard Davenport v. Commissioner
Docket No. 38331.
United States Tax Court
1953 Tax Ct. Memo LEXIS 166; 12 T.C.M. (CCH) 856; T.C.M. (RIA) 53259; 2 Oil & Gas Rep. 1494; July 30, 1953
Robert L. Strickland, Esq., 706 Frost National Building, San Antonio, Tex., for the petitioner. E. G. Sievers, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined the following deficiencies in income tax: Year
Deficiency
1944
$85,323.76
1946
7,470.70
1947
28,161.05
The parties settled some of the adjustments in the deficiency notice, but three issues remain to be considered herein. (1) Did the distribution of the community property based upon a property settlement between *167 petitioner and her husband incident to a divorce decree give rise to a taxable transaction? (2) Was the $40,000 received by petitioner in 1947 in settlement of a suit filed against her former husband taxable to her? (3) Are legal fees and abstracting costs of $6,907.11 incurred by petitioner in connection with her suit against her former husband in 1947 deductible under section 23 (a) (2) I.R.C.? Findings of Fact The stipulation of facts is adopted as a part of our findings. Petitioner, an individual, resides in Houston, Texas. She filed her income tax returns for the years 1944, 1946, and 1947 with the collector of internal revenue for the first district of Texas. Petitioner married Dee Davenport in 1934 and they were divorced April 5, 1944. On April 1, 1944, petitioner and Dee Davenport entered into an agreement "to settle in an amicable way, and without litigation, the community property rights existing between them and to divide said community property in a fair, just and equitable manner". As a result of the settlement agreement, petitioner received all of the community cash and certain other property. Her husband received the remainder, and *168 it was primarily composed of oil and ranch interests. Dee Davenport executed an instrument whereby he conveyed to petitioner all of his right, title and interest in certain lands and royalties except, "* * * the balance remaining unpaid on January 1, 1944, on the oil and gas payment in the original amount of Three Hundred Thousand Dollars ($300,000.00) which was reserved by D.D. Oil Company in its assignment to Cosmo Petroleum Corporation * * *." The oil and gas payment referred to above was held by Mackhank Petroleum Company which was a producer on the property. The interest in the oil and gas payment and other property were conveyed to a trustee to be held in trust for Dee Davenport. On April 5, 1944, the settlement agreement was adopted and made a part of the divorce decree by a Texas District Court. Petitioner reported no gain or loss from the division of community property based on the settlement agreement. Respondent determined that the disposition of the community property from the settlement and divorce resulted in a net long-term capital gain to petitioner of $220,445.96 in 1944. Shortly after the divorce decree was entered on Paril 5, 1944, petitioner conceived *169 the idea that her former husband had failed to disclose all of their community property and its fair market value as of the time the divorce decree was signed and entered. On April 19, 1944, petitioner wrote a letter to the Mackhank Petroleum Company disputing the rights of Dee Davenport to the oil payment due from the company. As a result of petitioner's letter, beginning in May 1944, the Mackhank Petroleum Company withheld all amounts becoming due on the then unpaid balance of the $300,000 oil payment until the balance amounted to $125,159.11. This sum was still retained by Mackhank Petroleum Company on December 29, 1947. Petitioner attempted to settle the disagreement with her former husband. However, on September 8, 1947, after negotiations had failed to resolve the controversy, petitioner filed a suit against Dee Davenport to set aside the divorce decree of April 5, 1944, in so far as it disposed of their community property. In addition, she asked for a redetermination of the community property rights. The law suit was settled by the parties subject to the approval of the court. On December 29, 1947, a Texas District Court approved the settlement and entered a final judgment *170 which embodied the settlement agreement. As a result of the settlement agreement, the Mackhank Petroleum Company was authorized to pay $40,000 to the petitioner out of the $125,159.11 held in escrow by the company. The balance was paid to her former husband. Petitioner reported no part of the $40,000 as taxable income in 1947. In the deficiency notice respondent determined that $33,092.89 ($40,000 less $6,907.11 for legal fees and expenses) represented a long-term capital gain realized by petitioner in 1947 from proceeds received in settlement of litigation against her former husband. It was stipulated that $6,907.11 was expended in connection with the settlement agreement approved by the court on December 29, 1947. Petitioner and her former husband, by virtue of the settlement agreement incident to their divorce, entered on April 5, 1944, divided their community property assets between themselves. This was a division and distribution of equally owned assets and not a sale. The second settlement agreement, approved by the court on December 29, 1947, whereby the petitioner received an additional $40,000, was a taxable division and distribution of community assets. Opinion *171 Does a community property settlement between a husband and wife, when the settlement was in immediate contemplation of a divorce, and where it was adopted by the court in the divorce decree, create a taxable transaction to the wife? This is the first issue. As the result of a settlement and divorce, petitioner-wife received all of the cash, an automobile, and certain real property. Her husband received the remainder of the property and it was primarily composed of realty and interests in oil and gas. Respondent contends that the petitioner sold her interest in the community property and that the settlement was not the result of a true partitioning, but was a settlement by a taxable bargain and sale. Petitioner contends that this settlement was a non-taxable partitioning of community property. There is no question as to the ownership of community property. It has been regarded as firmly settled since the decision of Hopkins v. Bacon, 282 U.S. 122, following Poe v. Seaborn, 282 U.S. 101, that a husband and wife under Texas law have each a present vested one-half interest in the property of the marital community. The intent of the parties will aid us in *172 determining whether there was a sale or a division of community property. The divorce decree and the embodied separation agreement are part of the stipulated facts. It is unnecessary to quote at length from these instruments, but certain statements therein unequivocally express the parties' intent as of the time they made the division of the property. The court which issued the divorce decree made the settlement agreement a part of the decree and in its statement of approval found that the settlement agreement was "fair, just and reasonable". In the agreement the parties themselves wrote that they "desire to settle in an amicable way, and without litigation, the community property rights existing between them, and desire to divide said community property in a fair, just and equitable manner". In the first part the agreement provides, "Mrs Davenport shall receive as her equal portion of the community estate", and then it goes on to name certain property interests and a sum of money, $502,900 in cash, as her interest. Continuing with the agreement: "It is agreed by the parties hereto that the $502,900.00 hereinabove provided to be paid to Mrs. Davenport is paid for the purpose of *173 equalizing the division of the community property of said parties and to reimburse Mrs. Davenport for any advancements she may have heretofore made out of her separate funds for the benefit of said community estate." The second part provides, "Mr. Davenport shall receive as his equal portion of the community estate", and then it proceeds to name certain pieces of real property, shares of stock, a truck, and personal effects. At another point in the agreement the parties agreed to turn over to each other their insurance policies. Elsewhere in the agreement the parties agreed to share in certain furniture that was used by the D.D. Oil Company. Finally, the parties agreed that: "This contract shall not be effective until it has been approved by the court in the above entitled and numbered divorce proceeding, and after its approval the terms of this agreement shall be forthwith carried out by each of the parties hereto." The whole instrument gives the impression that the parties intended to divide the entire community assets. Part of the property was divided in kind, but for that which was not petitioned petitioner received cash in its stead. Nowhere in the instrument do the parties *174 indicate an intent to buy or sell the community property to each other. We are not inclined to apply a theory of constructive sale where the record so strongly demonstrates its absence in fact. If we reduce respondent's theory to its logical conclusion, the respondent would have us find a settlement by bargain and sale because the community property was not entirely divided in kind, or because the indivisible properties were not sold and the proceeds then divided. We should not and we will not limit a property settlement to one of these two methods. Respondent cites C. C. Rouse, 6 T.C. 908, affd. 159 Fed. (2d) 706, as authority for his determination, but we do not think that case controls the law on the facts before us. We think it is distinguishable on the facts. There both separate and community property were involved. Further, the Court found from the record that the transaction was a sale and not a partition of the property. Here there was an actual partition of the property, though not in kind but in value. An actual division in kind may not be best for the parties. A settlement must consider the earning power, the business opportunities, the capacities *175 and the abilities of the parties. When these are considered it is not improper or unreasonable to divide community assets in some manner other than those in kind. See Earnest v. Earnest, 223 S.W. (2d) 681. Respondent also argues that the petitioner received as her share more than 50 per cent of the cost basis of the community property and that she received this by means of a bargain and sale. In answer to this argument, petitioner points out that most of the property involved was oil and gas property and that the fair market value at the separation date was greatly in excess of the cost basis. A division on the cost basis might have produced an inequitable result. We agree with the petitioner on this point. The attorney who represented petitioner at the time of her divorce testified in the present proceeding that the divorce settlement, in his opinion, was a division of the property equally between the former husband and petitioner. His testimony is not conclusive but it does buttress petitioner's contention. From the record as a whole we can only conclude that petitioner and her former husband did not bargain and sell the community property between themselves, but *176 amicably divided it by a separation agreement and divorce. The petitioner must be sustained on this first issue. The second issue concerns the $40,000 received by petitioner in 1947 in settlement of her suit against her former husband. Petitioner's primary contention is that this sum was not taxable because it was received as a redivision of community property. On the other hand, respondent contends that it is taxable as a net long-term capital gain since it was received in settlement of a suit. Respondent also included the $40,000 in the taxable income of petitioner's husband (see Dee Davenport, Docket No. 37711 [12 TCM 860]) for the year 1947 on the ground that the money constituted proceeds from oil payments constructively received by him from the Mackhank Petroleum Company. Shortly after the divorce decree of April 5, 1944, petitioner determined that her former husband had failed to disclose all of the community property. She felt, as a consequence, that she had not received her just share in the settlement agreement. Petitioner, on September 8, 1947, filed a suit against her former husband. In her petition she alleged that, because of her illness and the complexity *177 of the property involved, she relied upon her husband's representations as to their community property. Continuing, she alleges that his representations were false so as to perpetrate a fraud on her. She asked the court to set aside the property settlement and the deeds executed pursuant thereto. In the alternative, she asked that she have judgment for the title and possession to certain property, for an accounting, for damages and for costs. Prior to a trial on the merits the parties settled their differences. It was agreed that the former wife, now the petitioner, would receive $40,000 in cash, payable out of the unpaid balance of oil and gas payments then held by the Mackhank Petroleum Company. This settlement was embodied in a "Final Judgment" of December 29, 1947, in the District Court of Starr County, Texas, 79th Judicial District. The classification for tax purposes of amounts received in settlement of litigation is to be determined by the nature and the basis of the action settled. Lyeth v. Hoey, 305 U.S. 188; Helvering v. Safe Deposit & Trust Co. of Baltimore, 316 U.S. 56; Raytheon Production Corporation v. Commissioner, 144 Fed. (2d) 110; *178 Margery K. Megargel, 3 T.C. 238. We can not see how the 1947 settlement resulted in anything but a further division of community property. However, it was a division of community property which by its nature was includible in taxable income. The settlement resulted in a distribution and division of an oil payment, and oil payments are includible in taxable income. T. W. Lee, 42 B.T.A. 1217, affd. 126 Fed. (2d) 825; Dorothy Cockburn, 16 T.C. 775. Had there been no settlement, but in its place a court order, based on the merits of the case, giving petitioner $40,000 of the oil payment, this sum would be includible in taxable income. The settlement agreement has not altered the nature of what she received. Petitioner by her second suit was only seeking restitution of her community property. The amicable settlement between the former husband and wife gave her this property and nothing more. Petitioner argues that the $40,000 was not payable out of a particular fund. Petitioner attempts to place the $40,000 in the same class as the cash which she received in the first settlement in 1944. The record does not sustain this argument. *179 Petitioner first wrote the Mackhank Petroleum Company a letter wherein she disputed her former husband's right to the oil payments. As a result of her letter, the oil payments were withheld and placed in escrow. Next, petitioner sued her former husband, and the settlement followed. From this she was paid $40,000 "in cash payable and paid out of the unpaid balance in the hands of the Mackhank Petroleum Company". Finally, petitioner received the money from the Mackhank Petroleum Company. All of the facts indicated that she received $40,000 from the oil payment. Since the oil payment is taxable, and since it was received in 1947, it is includible in petitioner's 1947 income. [1]T. W. Lee, supra; Dorothy Cockburn, supra.We do not decide as to the type of income, since the determination treats the payment as capital gain and respondent has made no application for increased deficiency. There is no evidence as to depletion, but the parties have stipulated that $14,684 is the cost basis of petitioner's interest. This sum shall be used to compute net income. For the *180 third issue it is stipulated that petitioner expended $6,907.11 in connection with the 1947 settlement agreement and with the filing of the suit. Petitioner contends that these expenses are deductible under section 23 (a) (2) of the Code. This section provides, "In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income", may be taken as a nontrade or nonbusiness expense. The established rule is that legal expenses are allowable deductions in divorce and settlement cases only where the settlement results in taxable income to the taxpayer. Elsie B. Gale, 13 T.C. 661, affd. 191 Fed. (2d) 79; Barbara B. LeMond, 13 T.C. 670; Agnes Pyne Coke, 17 T.C. 403, affd. 201 Fed. (2d) 742; see Regulations 111, section 29.24-1 as amended G.T.D. 5889. Since we have held above in the second issue that the second settlement resulted in taxable income to the petitioner under the authority of the regulations, the Gale, LeMond and Coke cases, *181 it is proper for the petitioner to deduct the $6,907.11 which was expended in connection with the 1947 settlement agreement and the filing of the suit. Decision will be entered under Rule 50. Footnotes
1. Petitioner's former husband included the balance of the oil payment in his 1947 income.↩